## McCALL *against* THE BYRAM MANUFACTURING COMPANY.

Where an officer, in the service of a writ of attachment, on the stock of an incorporated company, left a copy with *M.*, describing him as " agent and acting clerk" of the company; and it appeared, that *M.* had previously been appointed agent of the company for one year, or during the pleasure of the directors; that it was his business, in that capacity, to superintend the establishment of the company, to make the purchases and sales, and to keep the accounts, and that he resided, and was the only officer of the company who did reside, in the state; it was held, that *M.*, under these circumstances, was not secretary or clerk of the company, and that the leaving of a copy with him was of no avail to constitute legal service of the attachment.

A secretary *de facto*, is a secretary within the letter and spirit of the statute regarding the service of attachments and executions on the stock of incorporated companies.

It is competent for the directors of a manufacturing company, incorporated by the legislature of this state, without restriction as to the place of holding their meetings, to meet in another state, and there appoint a secretary.

It is no legal disqualification of the secretary of a manufacturing company, incorporated by the legislature of this state, that he permanently resides in another state.

An officer elected for " the year ensuing," in the absence of any restrictive provision, may continue to hold and exercise his office, after the expiration of the year, until he is superseded by the election of another person in his place.

This was an action on the case, brought to recover the dividends, declared, in *March,* 1824, on thirty shares of the stock

of *The Byram Manufacturing Company*, owned by the plaintiff.

The cause was tried at *Fairfield*, at an adjourned term, in *April*, 1826, before *Bristol*, J.

*Fairfield,*
*June,*
*1827.*

McCall
*v.*
Byram
Manufacturing
Company.

*The Byram Manufacturing Company*, was incorporated, by the legislature of this state, in *October*, 1813, on the petition of *Jared Peck* and others, shewing, that they had purchased a tract of land in *Greenwich*, in this state, and were erecting buildings thereon for cotton and woollen manufactures. After conferring general powers, the legislature authorized the company to hold " any such lands, tenements or hereditaments in said town of *Greenwich*," as should be necessary for its purposes. The qualifications required of directors, were, that they should be stockholders, and citizens of the *United States*. They were authorized to appoint and employ, from time to time, a secretary, treasurer, and such other officers and servants, as they might think proper for the transaction of the business and concerns of the company. They were also authorized to make and establish such by-laws, rules, and regulations, as they should think expedient, for the better management of the concerns of the corporation.

At a meeting held on the 19th of *November*, 1813, the following by-laws, among others, were established. 1. There shall be a meeting of the stockholders of the company, holden in the city of *New-York*, on the first *Tuesday* of *November*, in each year, at such place as the directors shall order, for the election of directors, and for transacting any other necessary business. 2. It shall be the business of the secretary to make and keep a journal of all the meetings of the stockholders, and the business by them in company meetings transacted; also of all meetings and business held and done by the board of directors; and shall do all such other things as the directors may order. 5. It shall be the duty of the secretary to procure a common seal for the company of a suitable device.

A dividend of profits had been declared, and a demand made by the plaintiff, as stated in the declaration.

The thirty shares of stock in question, were originally owned by *William Cairns*, of the city of *New-York*. The plaintiff claimed title to these shares, by the levy of attachments and executions in his favour against *Cairns*. His writs of attachment were served on the 13th of *October*, 1823; copies being left in the hands of *William Timpson*, described as " secretary or clerk of said *Byram Manufacturing Company*." The

*Fairfield,*
June,
1827.

McCall
*v.*
Byram
Manufacturing
Company.

plaintiff afterwards obtained judgments in the suits thus commenced, and in the month of *May,* 1824, had the executions issued thereon levied on the shares in question, copies being left with *Timpson,* as before.    On the sale at the post, the plaintiff became the purchaser.

It appeared from the records of the company, that all the meetings, both of the stockholders and of the directors, were holden in the city of *New-York.*    To shew that *Timpson* was secretary of the company, during the years 1823 and 1824, when the plaintiff's attachments and executions were levied, the following vote of the board of directors was read in evidence : " Resolved, that *William Timpson* continue secretary and treasurer for the year ensuing, commencing on the 1st instant.    *New-York, January* 30th, 1823."    It was admitted, that *Timpson* had kept the seal and books, and had been the only acting secretary of the company, from the time of his first appointment in 1822, to the time of trial, unless *Sullivan Moulton* was to be deemed the secretary of the company, from the facts hereafter stated.    During the period in question, *Timpson* resided permanently in the city of *New-York,* where the transfer books and records of the company were uniformly kept. The defendants claimed to have proved, that *Timpson* came into this state, by the procurement of the plaintiff, for the purpose of having the plaintiff's attachments and executions served, and was no otherwise in this state, during that period.

On these facts the defendants contended, and prayed the court to instruct the jury, that the plaintiff had acquired no title to the stock in question ; 1st, because the company could do no corparate act out of the jurisdiction of this state, and, therefore, the appointment of *Timpson,* as secretary, was void ; 2ndly, because the directors could not appoint a person secretary, who resided permanently out of this state ; 3dly, because the evidence exhibited did not shew, that *Timpson* was secretary, either in law, or in fact, during the year 1824.

The defendants also claimed, that the title to the stock was vested in *Thomas Darling,* the administrator of *Garret Stevens,* by the levy of the first attachment, and of an execution issued on a judgment obtained in the action thus commenced.    The attachment of *Stevens* was served on the 17th of *September,* 1823 ; a copy being left with *Sullivan Moulton,* described as " one of the directors of said company, and agent and acting clerk thereof."    In *October,* 1825, the execution was levied on

the stock so attached ; and on a sale at the post, *Darling*, as administrator of *Stevens*, became the purchaser. To shew the official character of *Moulton*, the defendant exhibited the following vote of the directors, passed at a meeting of the board in *Greenwich*, in this state, on the 17th of *January*, 1821 : " Resolved unanimously, that *Sullivan Moulton* be continued as agent of *The Byram Manufacturing Company* for one year from the 1st instant, or during the pleasure of the president and directors." The defendants further offered evidence, to prove, that *Moulton* was continued as such agent through the years 1823 and 1824. It was admitted, that the business of the agent, was, to superintend the manufacturing establishment of the defendants at *Greenwich* ; to purchase raw materials ; to sell the manufactured goods ; to employ workmen, &c. It was also admitted, that *Moulton* kept books of accounts, shewing his receipts and disbursements ; on what account moneys were received and paid ; and fully exhibiting the state of the accounts between himself and the company. It was further admitted, that during the years 1823 and 1824, *Moulton* resided in this state ; and that he was the only officer of the company, who did reside in the state, during these years.

Upon these facts, the defendants claimed, that the title to the stock became vested in *Darling*, as the administrator of *Stevens ;* and prayed the court so to instruct the jury.

The judge charged the jury, that the levies and sale in the suits in favour of *Stevens*, were void ; and that the levies and sale in the suit in favour of the plaintiff, were good and valid, provided that *Timpson*, when the attachments were levied, and the shares were sold, was *in fact* secretary of the company, although no record were made of his appointment as secretary, and notwithstanding the meetings of the directors were held in *New-York*, and *Timpson* permanently resided there.

The jury returned a verdict for the plaintiff ; and the defendants moved for a new trial for a mis-direction.

*Bissell* and *Hawley*, in support of the motion, contended, 1. That the attachment of *Stevens* was valid, being the only service, that could by made. The copy was left with the only officer of the company in this state ; the one who kept its books of account, and had the entire superintendence and controul of all its concerns. He did the duty of a clerk. At any

*Fairfield,*
June,
1827.

McCall
*v.*
Byram
Manufacturing
Company.

*Fairfield,*
*June,*
1827.

McCall
*v.*
Byram
Manufacturing
Company.

rate, this service was as effectual to give notice as if the statute had been literally complied with.

2. That the plaintiff acquired no title by the levy of his attachment and executions; *Timpson* not being a legal secretary or clerk of the company.

First, the directors could not be legally appointed at meetings held in another state; nor could they legally act out of this state. Can a company incorporated by authority of the legislature of this state, do any corporate act without the limits of that legislature's jurisdiction? Can the legislature of this state establish a bank at *New-Orleans?* With reference to this question there is a clear distinction between *corporate acts* and *contracts.* An agent, duly appointed within the jurisdiction, may act without, but the appointment canno t be made without. A town in this state may appear, by its agent, and prosecute a suit in *Massachusetts;* but the meeting at which the agent is appointed, must be held within the town. The appointment of the officers of a corporation, is clearly, and exclusively, a corporate act. On this subject the corporation can speak only by its *votes. Jackson* d. *Wickoff* v. *Humphrey,* 1 *Johns. Rep.* 498. *Beatty* v. *The Marine Insurance Company,* 2 *Johns. Rep.* 109. *Mc Queen* & al. v. *The Middletown Manufacturing Company,* 16 *Johns. Rep.* 7.

Secondly, if the directors could be appointed and act out of this state, they could not appoint a person secretary or clerk, who *permanently resided* out of this state. The legislature intended, that the stock of this company should, at all times, be liable to attachment and execution; but if a person permanently residing in a foreign jurisdiction, may be appointed secretary, this intention may be frustrated, and the company may, at pleasure, protect its stock from the claims of creditors, Such appointment is opposed to the policy of our law, and is, therefore, void. Where an office is in perpetual execution, there must be perpetual residence. *Bul. N. P.* 206.

Thirdly, if the directors could appoint a person secretary, whose permanent residence was in another state, still *Timpson's* appointment had expired, by its own terms, when the copy was left in service with him, on the levy of the plaintiff's execution, *viz.* in *May,* 1824. He was appointed for a limited time, *viz.* the year ensuing the 30th of *January,* 1823. An office thus limited, expires at the end of the term. *The Queen* v. *The Corporation of Durham,* 10 *Mod.* 146,

Fourthly, if *Timpson* was not secretary, the leaving of a copy with him could not be converted into legal and valid service, by means of any *acquiescence* on the part of the company. The controversy is wholly between the creditors of a stockholder; the company being a mere nominal party, without interest. These creditors stand upon their legal rights at the time; which are not to be affected, by the subsequent conduct of the company.

3. That the charge was erroneous or defective on other grounds.

First, there was no evidence that *Timpson* was, at this time, secretary *de facto;* and of course, there was no ground on which this question could be submitted to the jury. It does not appear that any act pertaining to the duty of secretary, was done by *Timpson*, after the expiration of the time for which he was appointed.

Secondly, the charge did not inform the jury *what acts* were necessary to constitute a secretary *de facto*. This was a question of *law* arising upon the case made out in evidence, upon which it was the duty of the court to instruct the jury.

*N. Smith* and *Sherman*, contra, contended, 1. That the attachment of *Stevens* was never served on any officer of the company, as required by the statute; and was, therefore, void. *Moulton* was not, either nominally or actually, the secretary of the company. The business of the secretary is to keep the *records*. He, as secretary, has nothing to do with the *account books;* nor with the general superintendence of the establishment. The fact that *Moulton* was the only officer of the company in this state, does not make him its secretary. It is the statute alone, and not the general policy of our law, which authorizes the attachment of corporate stock. On this subject there is no construction *cy pres*. If the creditor fails to comply with the statute, he fails to acquire any right.

2. That the election of *Timpson* in *New-York* was valid; as a corporation may perform acts, and elect officers, out of the state. The charter determines the residence of the directors, *viz.* that they shall be citizens of the *United States*, and is silent as to the place where they shall hold their meetings. The legislature has specified all the restrictions, which it thought proper to impose. Is there any principle of common-

*Fairfield,*
*June,*
1827.

McCall
*v.*
Byram
Manufacturing
Company.

McCall
*v.*
Byram
Manufacturing
Company.

law confining the acts of the directors to the local limits of this state ?  In *The Portsmouth Livery Company* v. *Watson* & al. 10 *Mass. Rep.* 91. the question was, whether the powers of a corporation created by the legislature of another state, could be exercised in *Massachusetts ;* and the question was decided in the affirmative.  Has an officer of a bank no power out of the state ?  Should the president and secretary of an insurance company effect a policy out of the state, would it not be binding on the company ?  May not a manufacturing company extend its operations through the country ?

3. That if the election of *Timpson* was valid, he would continue in office until another secretary was chosen and sworn. The charter authorized the appointment and employment of a secretary, without limiting the term of office.  By a vote of the directors, he was continued secretary for the year ensuing the 1st of *January,* 1823.  Now, it is settled, even with respect to officers, who are required by law, to be elected annually, that they may hold over after the year, until others are chosen and sworn.  *Foot* v. *Prowse,* 2 *Stra.* 625.  *Prowse* v. *Foot,* in error, 2 *Bro. Parl. Ca.* 229.  (*Toml.* ed.) *Slee* v. *Bloom,* 5 *Johns. Chan. Rep.* 378.

4. That if *Timpson* had never been elected, yet if, as the case shews, he was the only acting secretary for several years, and during the time in question, the defendants have thereby made him their officer, having held him out as such, and cannot now deny his authority.  A corporation may contract, and do other acts, impliedly, as well as expressly : It may bind itself, by a course of conduct, as well as by its votes.  *Bank of Colombia* v. *Patterson's* admr. 7 *Cranch* 305.  *Proprietors of the Canal Bridge* v. *Gordon,* 1 *Pick. Rep.* 297, 304.  *Kidston* v. *The New-Haven Fire Insurance Company,* in superior court, *New-Haven* county.  *Bulkley* & al. v. *The Derby Fishing Company,* 2 *Conn. Rep.* 252.  The jury have found the fact that *Timpson* was secretary *de facto ;* and this is sufficient with respect to creditors, who have not access to the books of the company.

HOSMER, Ch. J.  I shall first enquire, whether the service of the attachment of *Stevens,* by the officer, who only left a copy with *Sullivan Moulton,* one of the directors and the agent of the company, was legal.  It is unquestionably clear, that this was no compliance with the requisitions of the law.  *Moulton*

*Fairfield,*
June,
1827.

McCall
*v.*
Byram
Manufacturing
Company.

was not the *secretary* of the company.   As director and agent, there were assigned to him duties of an entirely different character.   It is true, there was no secretary residing in the state; but this fact only proves, that there was an impossibility of making legal service.   If the question of service depended on the common law, and on a rule of practice established by courts, there would be reasonable ground for the assertion, that *impossibilia excusant legem.*   But the corporation is an artificial person, made by the legislature, and subject to such liabilities only, as that body has prescribed.   The statute has made an imperative requisition, as to what shall constitute a legal levy on corporation shares : and it is not within the competency of the court to be wiser than the law.

The attachment by *Stevens*, not being conformable to law, created no lien : and the execution, which subsequently issued in favour of *Darling*, was levied in a manner equally defective.   I shall not further discuss this subject, as the result to which the Court has come, renders it unnecessary.

I come now to consider the title of the plaintiff.

His attachment of the shares, was served, by leaving with *Timpson*, the supposed secretary, an attested copy, with a competent return indorsed ; and in the same manner, service was made of his execution.   If *Timpson* was secretary, this was in precise conformity with the law ; (*Stat.* 36, 7. *s.* 6. 58, 9. *s.* 80.) and invested the plaintiff with a legal title to the shares in question.

That *Timpson* was secretary in fact, appears from the verdict of the jury.   There is no foundation for the pretence, that he was merely an usurper.   The being sworn and acting, it must be admitted, do not constitute an officer *de facto*.   There must be an apparent election to office, although for some cause, the person chosen is not *de jure* qualified for his station.   1 *Woodes.* 491   As was said in *Rex* v. *Lisle*, 2 *Stra.* 1090., to constitute a man an officer *de facto*, there must be, at least, the form of an election, although upon legal objections, it may fall to the ground.   In this case, there undoubtedly was, the form of an election, and the actual and sole exercise of the official duties by *Timpson*.

Now, a secretary *de facto*, is a secretary within the letter of the law.   In my opinion, he is equally within the reason and spirit of it.   The object of the legislature was, notice to the corporation and the stockholders, and this is equally accom-

*Fairfield,*
June,
1827.

McCall
*v.*
Byram
Manufacturing
Company.

plished, whether a secretary is in the exercise of his official duties, by an unexceptionable election, or under the form of an appointment supposed to be valid. His acts would be obligatory on the corporation ; and not a solitary reason occurs, to show, that the legislature has required a secretary *de jure,* or that the shares of a stockholder shall otherwise be locked up from attachment and execution.

This determines the case in favour of the plaintiff ; but as the Court have no doubt on another point in the case equally conclusive, I will proceed to express their opinion upon it.

I shall pass by the cases cited on both sides, relative to the liabilities on corporations resulting from parol contract, express and implied. They undoubtedly have a bearing on the question before the Court, and are stated in a very lucid and able manner in the " Commentaries on *American* law." 1 *Kent's Comm.* 232. & seq. There is, however, a more lucid and satisfactory way of settling the point in question ; and that is, by attending to the precise objections made by the defendants.

The first of them is, that the board of directors sitting in *New-York,* could not do any legal act.

I discern no principle, on which this proposition can be sustained. No law of the state of *New-York,* inhibiting the exercise of the authority contemplated, has been referred to ; nor am I aware that any exists. If so, the defendants should have proved it as a fact. *Mostyn* v. *Fabrigas, Cowp.* 161.— It is undoubtedly clear, that this state cannot establish a corporation within the jurisdiction of another state. It would be an invasion of sovereign power. But, that authority conferred on certain individuals, by the legislature of this state, the exercise of which has relation to an establishment here, may not be put in use, by votes or revolutions in another state, I do not admit.

By the appointment of a secretary in *New-York,* no law of *Connecticut,* has been contravened. Nor is there in the nature of a vote or election, which is the mere expression of the understanding and will, any thing that is local.

The objection, then, if any exists, must be exclusively this ; that the charter of the company has conferred no power, that can be exercised without the state.

It is not contended, that any locality is expressly given to the exercise of the authority in question. The directors of the company are agents ; and on what principle is their author-

ity, as such, annihilated, or the exercise of it by vote annulled, any more than a delegated authority to an agent in other cases? *Greenwich*, the town in which the manufactury is located, touches the line that separates the two states. Did the legislature of *Connecticut*, by implication, (for it has not been done explicitly,) intend it should be understood, that the directors might sit and vote on one side of this line, but if they went on the other side of this line, that their proceedings should be void? I cannot give such a construction to an unlimited grant of personal authority, consisting in the mere exercise of mind, and as little restrained by locality, as any other operation of the mind is.

*Fairfield,*
June,
1827.

McCall
*v.*
Byram
Manufacturing
Company.

.I admit, that the laws of *Connecticut* are local, and intended to be local. They are rules of action to the citizens of the state, while living within its jurisdiction. But the question before us, has no relation to the laws of *Connecticut;* but it respects the construction of a grant only.

The cases cited by the defendants have no bearing on the point in controversy. *Jackson* d. *Wyckoff* v. *Humphrey*, 1 *Johns. Rep.* 498. merely decides, that a judge of the state of *New-York*, authorized within that state to administer oaths, was incapable of administering an oath in *Canada*, to the witness of a deed. That the *president* of an insurance company cannot legally accept of an abandonment, when the charter prescribes, that every act of the corporation shall be done by the president *and at least four directors*, was the point decided in *Beatty* v. *The Marine Insurance Company*, 2 *Johns. Rep.* 109. And in *McQueen* v. *The Middletown Manufacturing Company*, 16 *Johns. Rep.* 5. it was said by the court, that if a president of a bank of another state were to come within the state of *New-York*, he would not so represent that institution as to authorize a suit against the corporation by attachment, under the act relative to absent and absconding debtors. That the bank might authorize him to appear and plead, was admitted. Between drawing a corporation after its president, wherever he moves, so as to make this artificial person suable in a foreign jurisdiction, and the appointment of a secretary or cashier, there is a most manifest difference.

That *Timpson*, being a permanent resident in *New-York*, was disqualified for the appointment of secretary, is made a second objection.

This exception has no support in point of fact. It does not

*Fairfield,*
June,
1827.

McCall
*v.*
Byram
Manufacturing
Company.

appear, that his residence in *New-York* was contemplated by the directors, but only that at the time of his appointment, he was there.

Let it, however, be admitted, that it was intended he should exercise his official duties in *New-York.* What duty of his required his residence at *Greenwich ?* He could, in *New-York,* at least act the part of a recording officer; and if any duty required his personal attendance at the manufactory, he must go there, or it would be unperformed. That copies of attachment and execution are to be left with him, constituted no duty of residence on his part, but infers only, that if he is inaccessible, no service can be made upon him. Even if the duties of his office were of perpetual recurrence, requiring perpetual residence, his total absence from the place of their execution, would not be evidence of his not being eligible ; but it would be good ground of his removal. *Bul. N. P.* 206.

This brings me to the third and last objection. It is said, that *Timpson's* appointment as secretary had *expired* before the levy of the plaintiff's execution.

It is clear from an examination of the by-laws and the acts of the directors, that the appointments were intended to be annual ; and in fact, were so originally. *Timpson* was appointed secretary, in *January,* 1822, and likewise in *January,* 1823, *for the ensuing year.* After this, he was the sole acting secretary ; and, by virtue of the legal construction of his appointment, he was secretary *de jure.* It is a well settled principle, that an annual officer continues until superseded, by the appointment of another in his place. *Foot* v. *Prowse,* 1 *Stra.* 625. *The Queen* v. *Durham,* 10 *Mod.* 147. *Bul. N. P.* 206. *The People* v. *Runkel,* 9 *Johns. Rep.* 147. 158, 9. *Slee* v. *Bloom* & al. 5 *Johns. Chan. Rep.* 366. 378. 2 *Kent's Comm.* 238. *Kelsy* v. *Wright* & ux. 1 *Root* 83. The time when such an appointment is to be made, is considered as directory, and not imperative. With what force does the reason apply to the present case, where neither charter nor by-law limits the official existence of the secretary, and where the indispensable necessity of his continuance in office until another shall occupy his place, is so strikingly apparent ?

I admit, that a statute, or by-law, or even an appointment, may be so restrictive, by the expression or implication of a negative, as to terminate an annual office at the end of a year.— But the election to office *for a year,* has never been considered

as of this description. Such is the appointment to our town offices ; but the persons appointed continue indefinitely, until the incumbent's place is supplied. See the cases before cited. In *The People* v. *Runkel*, 9 *Johns. Rep.* 147. the court inclined to believe, that an office which the statute in question vacated at the end of a year, would no longer continue ; but even of this they did not speak with confidence.

*Fairfield,*<br>June,<br>1827.

McCall<br>*v.*<br>Byram<br>Manufacturing<br>Company.

In conclusion, I have no doubt, that the plaintiff has made out his case, and that there ought not to be a new trial.

PETERS, BRAINARD and LANMAN, Js. were of the same opinion.

DAGGETT, J. gave no opinion, having been of counsel in the cause.

New trial not to be granted.