## SPENCER *against* CHAMPION.

By the charter of incorporation of a manufacturing company, it was provided, that the affairs of the corporation should be managed, by a board of directors, who should be stockholders, should hold their offices for one year, and should be annually elected ; that if an election of directors should not take place, in any year, at the annual meeting of the corporation, it should not, for that reason, be dissolved, but such election might be held thereafter, on any convenient day within one year ; and that the directors should have power to appoint and employ, from time to time, a secretary, treasurer and such other officers as they might think proper, for the transaction of the business and concerns of the corporation. On the 10th of *January* 1828, *A.*, *B.* and *C.* were chosen, by the stockholders, directors of the corporation ; and no directors were ever chosen afterwards. These directors, on the day of their election, appointed *C.* agent of the company, without limitation in regard to time ; and no agent was ever appointed afterwards, or for a longer time than one year. In *January* 1830, *D.* became, and continues to be, the sole owner of all the shares of the capital stock of the company. In *May* 1830, an officer, having an execution in favour of *E.* against the company, made demand of *C.*, as agent of the company ; and having levied the execution on the real estate of the corporation, he applied again to *C.*, as agent, to appoint an appraiser ; but no application, in either case, was made to *D.* In an action of ejectment, brought by *E.*, claiming title under such levy, it was held, 1. that the

corporation still existed, and its property remained liable to the payment of corporate debts, notwithstanding its neglect to exercise its franchises ; 2. that an annual officer, there being no restrictive provision in his appointment, holds his office until he is superseded, by the appointment of another in his place ; 3. that the transfer of the stock to *D.* had no effect upon *C's* character as agent ; 4. that no demand of or application to *D.* was necessary, the corporation, and not he, being the execution debtor ; 5. that *C.* being the agent of the corporation, at the time of such demand and application, they were legally made ; 6. that if otherwise, it would not follow that the levy was void, but that no demand and application whatever, were necessary.

Where the appraised value of land set off on execution, was 134 dollars, 44 cents, and the amount of the execution and officer's fees, was 134 dollars, 30 cents ; it was held, that the case was within the maxim *de minimis non curat lex,* and the levy was not therefore rendered void.

*Middlesex,*
July, 1833.

Spencer
*v.*
Champion.

THIS was an action of ejectment, which came on for trial, at *Haddam, August* term, 1832, before *Williams,* J., when the following case was agreed to, by the parties.

The demanded premises were formerly owned, by the *Smith Manufacturing Company ;* and the plaintiff claimed title, by virtue of the levy of two executions in his favour against that company. The defendant, being in possession, relied upon the plaintiff's want of title, claiming that his executions were not legally levied.

*The Smith Manufacturing Company* was incorporated, by the legislature of this state, in *October* 1815. The charter of incorporation, besides the usual general powers, contained the following provisions : " Resolved further, that the stock, property and affairs of the corporation shall be managed, by not less than three, nor more than seven directors, one of whom they shall appoint their president ; who shall hold their offices for one year ; which directors shall be stockholders and citizens of the *United States,* and shall be annually elected at such time and place as the regulations of said corporation shall prescribe."

"Resolved further, that the said president and directors for the time being, or a major part of them, shall have power to fill any vacancy which may happen in their board, by death, resignation or otherwise, for the then current year ; and to appoint and employ, from time to time, a secretary, treasurer and such other officers, mechanics and labourers as they may think proper, for the transaction of the business and concerns of the said company."

" Resolved further, that if it shall so happen, that an election of directors should not take place, in any year, at the annual meeting of the corporation, the said corporation shall not, for that reason, be dissolved ; but such election may be held thereafter, on any convenient day within one year, to be fixed on, by the directors, they previously giving public notice thereof."

Immediately afterwards, the company was formed and went into operation. Directors were chosen annually, until *January* 1828. The last legal meeting of the stockholders, for the choice of officers, was held on the 10th day of that month ; when *William Carter, Phinehas Gates, Christopher C. Gates* and *Joseph Brainerd* were chosen directors, by the stockholders ; and the directors, at the same time, appointed *Joseph Brainerd* to be secretary, treasurer and agent of the company. No director, secretary, treasurer or agent of the company was afterwards appointed ; nor was any such officer ever appointed for a longer time than one year. Some time afterwards, all the shares of the capital stock of the company were attached, in two suits against the company, and, in *January* 1830, were sold on the executions obtained in those suits to *Livingston Alexander*, who has ever since continued to be the sole owner of such interest in the shares as was transferred to him, by such sale. He has never, in any manner, constituted or appointed said *Brainerd* the secretary, treasurer or agent of the company.

On the 16th of *July* 1829, all the real and personal estate of the company was attached upon claims against the company of a greater amount than the value of such estate. Prior to the plaintiff's levy, all the personal estate of the company had been taken and sold on executions against the company ; and at the time of said attachments, the company was, and ever afterwards continued to be, insolvent.

The returns on both the plaintiff's executions, by the levy of which, he claimed title, were alike, *mutatis mutandis*. Such parts thereof as are material in this case, are comprised in the following extracts : " By virtue of this execution, to me directed, I, on the 4th day of *May* 1830, repaired, with this execution, to the usual place of abode of *Joseph Brainerd* in *East-Haddam*, agent, secretary, treasurer, one of the directors and one of the *Smith Manufacturing Company*, and

of him made demand of the debt or sum then due on this execution, together with my fees, costs and charges for executing the same." A similar demand is then averred to have been made on each of the other directors. The return proceeds thus : " And the said *Joseph Brainerd*, agent, secretary, treasurer, one of the directors and one of the *Smith Manufacturing Company* as aforesaid, and the said *Phinehas Gates*, *Christopher C. Gates* and *William Carter*, being all of the *Smith Manufacturing Company* as aforesaid, each and all of them neglecting and refusing to pay the same, or any part thereof ; and there being no goods, money or personal property shewn to me, or by the most diligent search to be found, within my precincts, whereon I might levy and satisfy this execution, by the special direction of the creditor within named, I, on the 6th day of *May* 1830, at *East-Haddam* aforesaid, levied this execution on a certain piece of land, as the property of the *Smith Manufacturing Company,* situated,"&c.

" And I afterwards, *viz.* on the 19th of *May* 1830, notified *James Spencer*, the creditor within named, of the levy aforesaid ; and he thereupon nominated and appointed *William Silliman*, an indifferent freeholder of said town of *East-Haddam*, as one of the appraisers of the land levied upon as aforesaid : and I then and there notified *Joseph Brainerd*, agent, secretary, treasurer, one of the directors and one of the *Smith Manufacturing Company* as aforesaid, of the levy aforesaid ; I also then and there notified *Phinehas Gates, Christopher C. Gates* and *William Carter*, of the *Smith Manufacturing Company* aforesaid, of my levy aforesaid ; and the said *Joseph Brainerd, Phinehas Gates, Christopher C. Gates* and *William Carter*, each and all of them, neglecting and refusing, either by themselves or by their attorney, to appoint an appraiser, or to agree with the creditor in the appointment of a third appraiser of the premises, I, on the 29th day of *May* 1830, applied to *Aaron C. Palmer*, Esq. of *East-Haddam*, a justice of the peace for said *Middlesex* county, who could by law judge between the parties in civil causes ; which said justice then and there appointed *Joseph W. Cone* and *Truman Fuller*, both indifferent freeholders of said town of *East-Haddam*, appraisers of the premises."

"And the said appraisers, after viewing the above described premises, did then and there estimate and appraise the same, with the privileges and appurtenances thereof, in fee, at the sum

*Middlesex,*
*July, 1833.*

*Spencer*
*v.*
*Champion.*

of 134 dollars, 44 cents, as the then present true and just value thereof."——Whereupon I then and there, on the 29th day of *May* 1830, set off to *James Spencer,* the creditor in said execution, the whole of the above described piece of land, with the privileges and appurtenances, in fee, as above appraised, in full satisfaction of this execution, my fees, costs and charges thereon."

The amount of the execution, including damages and costs, was 120 dollars, 29 cents ; and the officer's fees on the execution were 14 dollars, 1 cent ; making, in the whole, 134 dollars, 30 cents, being 14 cents less than the appraised value of the land.

The case was reserved for the advice of this Court, on the question whether the plaintiff or the defendant is entitled to judgment.

*Strong* and *E. A. Bulkley,* for the plaintiff, contended, 1. That the *Smith Manufacturing Company* was not dissolved, by any mis-user or non-user. A forfeiture for the abuse or neglect of the franchises of a corporation, must be judicially ascertained, and cannot be inquired into collaterally. *Slee* v. *Bloom,* 5 *Johns. Chan. Rep.* 380. *The Commonwealth* v. *The Union Insurance Company,* 5 *Mass. Rep.* 330. 332. *The King* v. *Amery,* 2 *Term Rep.* 515. *Enfield Toll Bridge Company* v. *The Connecticut River Company,* 7 *Conn. Rep.* 30. 46. *Angell & Ames on Corp.* 511. & n.

2. That *Brainerd* was the agent, secretary and treasurer of this corporation, at the time of the levy of the plaintiff's executions. An annual officer continues until superseded, by the appointment of another in his place. *Foot* v. *Prowse,* 1 *Stra.* 625. *The People* v. *Runkel,* 9 *Johns. Rep.* 147. *Hicks* v. *Launceston,* 1 *Roll. Abr.* 512. 514. *Slee* v. *Bloom,* 5 *Johns. Chan. Rep.* 366. 2 *Kent's Com.* 388. *Angell & Ames on Corp.* 66. 76. *McCall* v. *Byram Manufacturing Company,* 6 *Conn. Rep.* 438.

3. That if *Brainerd* was not the agent, &c. of the corporation, the levy is, nevertheless, good ; all having been done that could be done. It was not the duty of the officer to demand payment of *Alexander.* He was not the debtor. *Stat.* 56. The duty of demand and obligation of payment are reciprocal.

4. That if there was any excess of land taken on one of

*Mindlesex,*
July, 1823.

Spencer
*v.*
Champion.

the plaintiff's executions, it was so small as to bring the case within the maxim " *de minimis non curat lex.*" If otherwise, the remedy is in chancery. *Huntington* v. *Winchell,* 8 *Conn. Rep.* 47.

*Sherman* and *Waite,* for the defendant, contended, That the levies of the plaintiff's executions were void, on these grounds.

1. Because no *legal demand* was ever made thereon. The only demand stated in the returns, was made of persons who had been the stockholders of the company, but whose interest had been transferred long prior to the demand ; and consequently, they had ceased to have any interest in the property in question. The demand must be made of the *debtor* ; but none of these persons, nor all together, were the debtor.

Admitting that the corporation was not extinct, and that the *directors* might hold over the term of their appointment ; yet the *agent,* who is not an officer, but a mere servant, could not ; and at the time of the levies, in this case, *Brainerd* was not agent or secretary *de facto,* as *Timpson,* was in *McCall* v. *The Byram Manufacturing Company.*

2. Because the person who was the owner of the stock of the company, was *never notified* of the levy, and had no opportunity of appointing an appraiser.

3. Because on one of the executions *more land* was taken, than was sufficient, by the appraisement, to satisfy the debt and all costs.

BISSELL, J. In this case, it is admitted, that the *Smith Manufacturing Company* were lawful owners of the demanded premises. And it is further admitted, that the plaintiff has acquired their right, and is entitled to judgment, provided his executions be well levied. To these levies two objections have been taken.

1. That no demand was made on the executions.

2. That no application was made to the debtor to appoint an appraiser.

These objections were both resolvable into the first ; because it is obvious, from the facts stated in the case, that if there was a lawful demand, there was also a proper application to appoint an appraiser. The objection is, that the per-

Spencer
*v.*
Champion.

sons of whom the demand was made, in the first instance, and to whom the application was made, in the second, were neither officers nor stockholders of the corporation.

It is said, they were not officers; and in proof of this proposition, we are referred to the charter, in connection with certain facts, appearing in the case. The charter provides, that the affairs of the corporation shall be managed by a board of directors, *who shall hold their offices for one year;* and shall be annually elected, at such time and place, as the regulations of the corporation shall prescribe. There is, then, this further provision: " That if it shall happen, that an election of directors should not take place, in any year, at the annual meeting of the corporation, the said corporation shall not, for that reason, be dissolved; but such election may be held thereafter, on any convenient day, within one year, to be fixed on by the directors, they previously giving public notice thereof."

It appears from the case stated, that the persons, of whom demand was made upon the executions, were chosen directors of the corporation, on the 10th day of *January* 1828; and that subsequently to that period, no directors were chosen, either at an annual meeting of the stockholders, or at any special meeting holden for that purpose.

Now, it is contended, in view of the provisions of the charter, and of the facts here stated, that the persons named had become *functi officio*, and had ceased to be directors, long before the demand was made upon them; and of course, that the demand was entirely nugatory.

Whether these claims of the defendant are well or ill founded, I do not think it necessary to determine; because, admitting them to be well founded, they furnish, in my opinion, no ground of defence.

The charter, which has been already referred to, authorises the directors of this corporation " to appoint and employ, from time to time, a secretary, treasurer, and such other officers, &c., as they may think proper, for the transaction of the business and concerns of the corporation."

Now, it appears, that on the 10th day of *January* 1828, the directors appointed *Joseph Brainerd* secretary, treasurer and agent of the company; and that subsequently, no secretary, treasurer, or agent was appointed. The appointment of

*Brainerd* was without limitation, in regard to time. It would seem, therefore, to follow, as a necessary consequence, that he continued to be secretary, treasurer and agent of the company, at the time of the demand. The clause in the charter, which has been relied upon, to show, that the *directors* had ceased to be such, can have no effect upon this appointment. The power to appoint is unlimited : the appointment was unlimited.

It is indeed stated, as a part of the case, that no secretary, treasurer or agent of the company, was ever appointed, for a longer time than one year. But this can make no difference. For the principle is too well settled to be controverted, that an annual officer, if there be no restrictive provision, in his appointment, holds his office until superseded by the appointment of another in his place. *McCall* v. *The Byram Manufacturing Company*, 6 *Conn. Rep.* 428. and the cases there cited. *Brainerd*, then, was the secretary, treasurer and agent of the company ; and it surely would be an idle waste of time to prove, that the demand was rightfully made upon him. It could have been made of no one else.

But admitting, for the purposes of the argument, that *Brainerd* was not secretary, &c. ; and that there was no officer of the corporation, upon whom a demand could have been made; and that none was, in fact, made ; it by no means follows, that the levies were void.

Through whose neglect was it, that there were no officers ? Surely that of the corporation. And is it for them to raise the objection that no demand was made ? That the corporation was dissolved, by reason of this neglect, has not been, nor can it be, contended ; for though a corporation may be dissolved, by non-user or mis-user, and its franchises lost, yet this must be judicially determined, in a suit instituted for that purpose. *Enfield Toll Bridge Company* v. *Connecticut River Company*, 7 *Conn. Rep.* 30. 46. *Angell & Ames on Corporations* 511. & n.

The corporation still existed, and its property still remained liable to the payment of corporate debts : unless, indeed, we are prepared to sanction the extraordinary doctrine, that by neglecting to exercise its franchises, a corporation may place its property beyond the reach of its creditors. I do not think this can be done, without a gross violation of all princi-

ple. Be it so, then, that there was no officer of this company, upon whom a demand could be made ; it follows, not that the levies were illegal, not that they could not be made, but that no demand was necessary. And this is in precise conformity to the principle adopted in analogous cases. If the execution debtor be out of the state, no demand is necessary. " *Lex cogit neminem ad vana seu impossibilia.*"

But it is said, (and so, indeed, it appears from the case,) that as early as *January* 1830, and before the levy of the plaintiff's execution, one *Livingston Alexander* became, and has since continued to be, the sole owner of all the shares of the capital stock of said company ; and that he has never, in any manner, appointed *Brainerd* the secretary, treasurer or agent of the company.

From these facts two inferences have been drawn : first, that the demand on *Brainerd* was nugatory, he not being a stockholder ; and secondly, that it should have been made of *Alexander,* he being the only stockholder.

Neither of these inferences is correct.

1. The transfer of the stock to *Alexander* had no effect upon *Brainerd's* character *as agent.* He had not been removed. No other had been appointed. The stock of such companies is continually shifting hands ; and it would be very strange if the effect of every such event, was to remove all the officers of the corporation. If, indeed, it were an indispensable qualification of an agent, that he should be a stockholder, the argument would apply. But precisely the converse of this is true. An agent need not be a stockholder, any more than a mechanic or labourer. The charter does not require, that he should be.

2. It is said, that demand should have been made of *Alexander.*

Why, it may be asked, should this have been done ?

He was not the debtor of the plaintiff. The corporation was his debtor ; and upon that a demand has either been made, or is dispensed with, by the rules of law. What more can be necessary ? Demand might as well be made of any other stranger as of *Livingston Alexander.* Admit that he had become the owner of all of the stock of the company ; and thus the sole corporation. Still the consequences are the same as they would have been, had the stock been spread over

the community, and owned by hundreds of individuals.  Still it is a corporation; still it can act and be notified, only by its agent;—still it is the plaintiff's debtor; still demand must be made upon it, or dispensed with.  This, I think, has been done; and there is no foundation for the objections that have been urged.

It is objected, that upon one of the executions, an excess of land, to a small amount, has been taken.

The objection was not much insisted upon, in the argument. And it is sufficient to observe, that the case falls within the principle settled, by this Court, *in Huntington* v. *Winchell*, 8 *Conn. Rep.* 45.

I would advise the superior court, that judgment be rendered for the plaintiff.

The other Judges were of the same opinion.

Judgment for plaintiff.