*S. Judah*, for the appellant.

---

TULEY and Others *v.* THE STATE on the Relation of SMITH, School Commissioner of *Floyd* County.

Where there is an express or implied restriction in a charter of incorporation upon the time of holding office under such charter, as that the officers shall be annually elected on a particular day, and 'that they shall hold from one charter election day until the next; or that they shall be elected "for the year ensuing only;" in such cases the officers cannot hold over beyond the next election day, or 'the end of the year.

Where, by the constitution of the corporation, the officers are elected for a term, and until their successors are elected and qualified, or where they are elected "for the year ensuing," and the charter contains no restrictive clause, the officers may continue to hold their offices after the expiration of the year until they are superseded by the election of other officers to fill their places.

Under the act of 1831, a school commissioner could have indefinitely held his office until the election of a successor, and in such case his sureties would have been liable for his acts during his continuance in office.

The act of 2d of *February*, 1833, repealed the act of 1831, and limited the terms of school commissioners to the precise time for which they were elected, and the sureties were not liable, under that law, for the acts of the commissioner after the expiration of his term.

APPEAL from the *Floyd* Circuit Court.

PERKINS, J.—This was an action of debt by the state on the relation of *Jacob T. Smith* against *Preston F. Tuley* and others, his sureties, on the official bond of said *Tuley* as school commissioner of *Floyd* county. Judgment below for the plaintiff. The bond bears date *March* 15th, 1833. The following is its condition: "Whereas the said *Preston F. Tuley* has been elected, by the qualified voters of said county, school commissioner within the same, the condition of the above obligation is such, that

if the said *Preston F. Tuley* shall faithfully perform and discharge the duties of his said office, and shall moreover pay over to his successor in office all moneys that may come to his hands by virtue thereof, then the foregoing obligation to be void," &c.

It seems to be agreed by counsel on both sides that *Tuley* was elected under the act of 1831, before that of 1833 came into force, though the record does not expressly disclose anything on this point. The act of 1831 provided that " such commissioner shall hold his office for the term of three years, and until his successor is elected and qualified."

The declaration avers that no successor to *Tuley* was elected and qualified till *March* 15, 1838, and that up to that date he continued in the occupancy of the office of school commissioner. It alleges that " afterwards, to-wit, on the day last aforesaid, *William Williams* was elected successor" to said *Tuley*, and that " afterwards, to-wit, on the 15th of *March*, 1841, said *Jacob T. Smith* was elected successor" to said *Williams*. It charges that in each of the years 1834, 1835, 1836, and 1837, *Tuley* received 1,000 dollars belonging, &c., which he had failed and refused to pay over to his successor, &c. This failure constitutes the breach of the bond assigned. *Tuley* and his sureties severed in defence and severally pleaded nine pleas, those of each one being substantially like those of the others. The first five of each defendant were adjudged bad on demurrer, and we shall not have occasion to examine them. The sixth and seventh pleas of each defendant led to issues of fact. The eighth and ninth pleas of each defendant were as to the sums charged to have been received by *Tuley* in the years 1836 and 1837, and alleged that his term of office had expired previously to either of those years. Replications to these two pleas, that *Tuley* continued to discharge the duties of the office of school commissioner during those years under his election in 1833. Demurrers to these replications were overruled. The issues of fact upon the sixth and seventh pleas were tried by a jury and found for the plaintiff.

Nov. Term,
1849.

TULEY
v.
THE STATE.

Damages were assessed. A motion for a new trial was denied, and final judgment was rendered for the plaintiff.

The main question in the cause, and the one we shall first examine, is, could the principal in the bond sued on, *Tuley*, legally continue to hold the office of school commissioner for an indefinite period after the expiration of three years from his election in 1833, there being no successor elected and qualified? for if he could and did, we think there can be no doubt that his sureties continued liable under the unrestrictive terms of the bond given. This question arises on the demurrers to the replications to the eighth and ninth pleas. The general inquiry divides itself into two, more particular. 1. Could *Tuly* have indefinitely held over under the act of 1831, supposing that act to have remained in force, unchanged? 2. Did the act of 1833 shorten the tenure of his office? If this question, arising under the act of 1831, may be determined upon the principles applicable to officers of chartered corporations, and we think it may, we shall have no difficulty in deciding it. In respect to such officers we think it well settled—1. That where in the charter of incorporation there is an express or implied restriction upon the time of holding office, as that the officers shall be annually elected on a particular day, and that they shall hold from one charter (election) day till the next; or that they shall be elected "for the year ensuing only," in such case they cannot hold over beyond the next election day, or the end of the year; but, 2. That where, by the constitution of the corporation, the officers are elected for a term, and until their successors are elected and qualified, or where they are elected "for the year ensuing," and the charter contains no restrictive clause, the officers "may continue to hold and exercise their offices, after the expiration of the year, until they are superseded by the election of other persons in their places." As to the first of these two propositions, see *The King* v. *The Mayor of Tregony*, 6 Vin. Abr. 296.—*Corporation of Banbury*, 10 Mod. 346.—*Rex* v. *Pasmore*, 3 T. R. 199.—6 Petersdorf Abr. 738. As to the second, see Bacon's Abr.

Bou. Ed. 311.—*Foot* v. *Prowse,* Strange, 625.— *The Queen* v. *Corporation of Durham,* 10 Mod. 146.— *The King* v. *Lisle,* Andrews, 163.—*McCall* v. *The Byram Manufacturing Co.,* 6 Conn. 428.—*Spencer* v. *Champion,* 9 id. 536.— *Bethany* v. *Sperry,* 10 id. 200.—*Plymouth* v. *Painter,* 17 id. 588.—*Kelsy* v. *Wright, et ux.,* 1 Roote, 83.— *Weir* v. *Bush,* 4 Litt. 429.—*People* v. *Runkle,* 9 John. 147.—*Vernon Society* v. *Hills,* 6 Cow. 23.—*Slee* v. *Bloom,* 5 John. Ch. R. 366.—*Pender* v. *The King,* 6 Vin. Abr. 296. In the sixth edition of Kent's Commentaries, vol. 2, 295, n. b., the cases of *Hicks.* v. *The Town of Launcelot,* 1 Rol. Abr., 513, and *The Nashville Bank* v. *Petway,* 3 Humph. Tenn. R. 522, are cited to the same point. But two cases have fallen under our notice in which either of the propositions we are asserting has been doubted. They are, *Rex* v. *Poole,* Cas. Temp. Hardw. 23, found also in some other of the old reports, and *Phillips* v. *Wickham,* 1 Page, 590. Upon the foregoing authorities there can be no doubt but that, under the act of 1831, a commissioner would indefinitely hold over till the election of a successor. *Rany* v. *The Governor,* 4 Blackf. 2, is cited by the plaintiffs in error as in point in their favor, but it is not. There was no averment in the declaration in that case that a successor had not been elected, and the Court said they would not presume that none had been. There are some *dicta* in the opinion that may seem to go beyond the case, and some authorities are cited. We have looked into those authorities, and find them to have no bearing on this case. They were decided upon points different from the one under consideration. For instance, in the case of *The United States* v. *Kirkpatrick et al.* 9 Wheaton, 720, the appointment to office, the law under which it was made, and the bond given, were for a continuance in office till the end of the next session of congress, and "no longer." It was held, under these circumstances, that the sureties of the official bond were liable only for acts of the principal, done before the end of the session of congress. And the case accords with the decisions in regard to corporate officers, where, in the charter, there is an ex-

press or implied restriction, as that the officers shall be elected on a particular day to hold till the next charter day, or "for the year ensuing only." The case of *Dance et al.* v. *Gridler et al.* 1 Bos. & Pul. New Rep. 34, was decided upon the ground that an incorporated body was a different party from a voluntary association of persons, and that a bond to the latter was not a bond to the former. But we will not further comment upon the cases collected in *Rany* v. *The Governor.* We refer to the original reports of them to show that they are not in point to the case before us.

The second question is, did the act of the 2d of *February*, 1833, (Laws of 1833, p. 78,) shorten the tenure of *Tuley's* office? It repealed the act of 1831, under which he was elected, and, of course, terminated, on its coming into force, the office created by, and held under the act of 1831, unless it contains a saving clause as to such office. It contains no express one. Sections three and four of the act are as follow:

"Sect. 3. One school commissioner shall be elected by the qualified voters of each county, in which no such commissioner elected or appointed under the provisions of the present law is now in office, on the first Monday of *August* next, subject to the provisions of the law regulating general elections, who shall hold his office for three years and until his successor is elected and qualified."

"Sect. 4. Whenever any vacancy occurs in the office of any commissioner, now or hereafter elected or appointed, by death, removal, resignation, expiration of the term of office, or otherwise, the same shall be filled at the next *August* election, by the qualified voters of his county, as provided in the last preceding section of this act, and in the interim such vacancy shall be ·filled by a qualified person to be appointed by the board doing county business of said county."

Though these sections do not expressly, we think they do by implication, save for some time the terms of commissioners then in office. They provide for the election of these ·officers only in counties where there then are

none, and they provide for filling vacancies that may occur by the expiration of the terms of those then acting. Considering the inconvenience to the public that would otherwise result, we conclude the legislature must have intended to continue in office for some time commissioners then elected, and the question is, for what length of time? We consider the meaning of the two sections of the statute above quoted to be the same as though they read thus:

Be it enacted, that in each county in this state in which there is now no school commissioner, one shall be elected at the next annual *August* election.

That in each county in which there is a school commissioner now in office, such commissioner shall continue to hold for the term for which he was elected.

That whenever a vacancy shall happen in the office of a school commissioner belonging to either of the above classes, by the expiration of the term of office, &c., the same shall be filled at the annual *August* election next succeeding the happening of such vacancy. And where an interim occurs between the happening of the vacancy and the annual election, the same shall be filled by appointment, by the county board, &c.

And be it further enacted, that should the county board in any case neglect to fill such interim by appointment, or should the voters fail to supply such vacancy at the proper *August* election, then, if such vacancy happen in one of the offices filled by election under the act of 1833, the incumbent at the happening of the vacancy shall hold over till a successor shall be elected and qualified; but if such vacancy happen in one of the offices filled by election under the act of 1831, we make no provision for the incumbent at the happening of such vacancy holding over till the election of a successor.

Applying this law, then, to the case before us, it enacts that *Tuley* shall hold his office for three years from his election, and that immediately upon the termination of that period the county commissioners, or the voters of the county, as the case may be, shall fill the vacancy occa-

sioned by the cessation of his official term, by the appointment or election of another person in his place. These provisions, in effect, repeal the clause in the law of 1831, authorizing *Tuley* to hold over till the qualification of a successor, and, as we think, place his case among those of the first class mentioned in this opinion, in which there is an implicit restriction upon the right of holding over.

It is argued, indeed, that when the act of 1833 preserved to *Tuley* "the term" for which he was elected, it meant, not the term of three years specially designated in the statute, but that other indefinite term which terminates on the qualification of a successor; but we think the former was intended. It could not be the latter; for by the act of 1833, the successor is not to be elected till the vacancy has actually happened, and, in some cases not till after the expiration of an interim between its happening and the election; but this term of office that ceases only upon the qualification of a successor, never can expire so as to produce an actual vacancy arising simply from expiration of the term, uncaused by death, removal, &c., as it continues till the successor has been actually elected and qualified. The Court erred in overruling the demurrers to the replications (1).

*Per Curiam.*—The judgment is reversed with costs, &c.

*J. Sullivan*, for the appellants.

*R. Crawford*, for the state.

(1) SMITH, J., having been concerned as counsel, was absent.