Stone *v.* Small.

ALLEN STONE, WILLIAM H. BROTHERS, L. F. BURDICK, JOHN P. REED, LEWIS BARABY AND HENRY CONANT
*v.*
JOSEPH B. SMALL, WM. B. WESTON, FRANCIS LECLAIR, MICHAEL GIBBONS AND BARNARD GRAHAM.

*Mandamus. Two Boards of Trustees of Incorporated Village. Election. Adjournment of Meeting.*

1. Mandamus is the proper remedy to compel the old trustees of an incorporated village, attempting to hold over, to deliver to the new board the books, papers and articles of personal property, in their possession, belonging to the village ; and to prevent their interfering with the new trustees in the exercise of their office.
2. When an act incorporating a village imperatively declares that its trustees shall be annually elected, on a certain day, the majority of a meeting called for the purpose of electing such officers, has no power to adjourn the meeting without day, in fraud of the law and the minority ; and if a legal minority immediately following such adjournment, re-organizes the meeting, and elects trustees, they are entitled to hold their office.

PETITION FOR MANDAMUS. The facts appear from the opinion. The case was submitted without argument.

*O. P. Ray*, for petitioners.

The opinion of the court was delivered by

ROWELL, J. By an act of the Legislature, approved November 19, 1866, which was at all times to be under the control of the

Legislature to alter or repeal, the inhabitants of that part of the town of Colchester embraced within certain prescribed limits, were incorporated, and made a body corporate and politic, under the name of the Village of Winooski, and granted all such rights, immunities, powers, and privileges as are incident to public corporations. The legal voters of said village accepted and approved said act according to the provisions thereof, and the village was duly organized thereunder. Said act divided the village into three wards, containing as nearly as possible an equal number of inhabitants, and provided that the annual meeting of said village should be held on the second Wednesday of January in each year, at 7 o'clock in the afternoon, at the town-room in said village, or at such other place as the village trustees should appoint; that at every annual meeting of said village the qualified electors thereof should, by ballot if called for, elect from among their number a moderator, a clerk, a treasurer, a collector, five trustees, and five fire wardens, who should hold their office for one year, and until their successors should be elected and qualified; and that each of said wards should have one of its residents for one of said trustees, and another for one of said fire wardens.

On the charter-day in 1880, the petitioners, Joseph B. Small, William B. Weston, Francis Leclair, Michael Gibbons, and Barnard Graham, were duly elected trustees of said village.

By an act of the Legislature, approved December 9, 1880, it was provided that the officers of said village to be annually elected should be a moderator, a clerk, a treasurer, a collector of taxes, six trustees, three fire wardens, and two auditors of accounts, who should hold their office for one year, and until their successors should be elected and qualified; that thereafter the legal voters of each of the wards of said village, at its annual meeting for the election of officers, should elect two of the trustees and one of the fire wardens of said village, instead of those officers being elected by general vote of the voters of the whole village, as then provided by law; that the village clerk should provide a separate ballot-box for each ward, into which the ballots of the voters of each ward should be cast for the trustees and fire warden resident therein; that said ward-boxes should be held open until the voters

of each ward had had a fair and reasonable opportunity to deposit their ballots, and in no case to be closed until fifteen minutes after the presiding officer of the meeting had made proclamation to that effect, at the expiration of which time all the ward-boxes should be returned to the presiding officer, with the ballots therein, to be counted ; that the two persons in each ward having the highest number of votes in such ward for trustees, and the person having the highest number of votes in each ward for fire wardens, should be deemed to be elected to such office ; and that all former acts and parts of acts inconsistent with said act were thereby repealed.

The annual meeting of said village for the year 1881 was legally warned by William Kidder, the village clerk, to be held at Concert Hall, in said village, on the second Wednesday of January of that year, at 7 o'clock in the afternoon, at which time and place the legal voters in village meeting assembled, and a majority of those present being opposed to the provisions of the act of 1880, for the purpose of defeating the election of officers thereunder, and without doing any business, voted to adjourn said meeting till the first Monday of January, 1882, at $7\frac{1}{2}$ o'clock in the afternoon, at which time said meeting was again adjourned, for the purpose aforesaid, and without doing any business, till the second Wednesday of said January, at $5\frac{1}{2}$ o'clock in the afternoon, at which time, for the purpose aforesaid, and without electing any officers, said meeting was adjourned without day.

The annual meeting of said village for the election of officers for the year 1882, was warned by said Kidder as clerk of said village, to be held at Corporation Hall in said village, on the second Wednesday of January, at 7 o'clock in the afternoon, at which time and place the voters assembled, and a majority of those present, still being opposed to the provisions of the act of 1880, for the purpose aforesaid, and without doing any business, voted to adjourn said meeting without day. The voters present who were in favor of said act, believing said adjournment to be illegal, and brought about for the purpose aforesaid, remained in the hall, re-organized the meeting, and proceeded to the election of officers as provided by said last-mentioned act, and then and there, among other officers, elected the petitioners, Allen Stone,

William H. Brothers, L. F. Burdick, John P. Reed, Lewis Baraby, and Henry Conant, trustees, and they accepted said office, and are now performing the duties thereof.

There are sundry books and papers and articles of property belonging to the village in the possession of the petitionees, of whom the petitioners as trustees have demanded the same, but who refuse to deliver the same to the petitioners, denying their right to receive the same, and claiming that they themselves are the legal trustees of said village by virtue of their election in 1880 as aforesaid ; that no successors to them have been elected ; and that they are still exercising the office of trustees.

The petition prays for a writ of mandamus, commanding the petitionees to deliver said books, papers, and property to the petitioners as trustees of said village, and not to disturb nor molest the petitioners in the exercise of the office of trustees, and for alternate relief.

Mandamus is the proper remedy. *Kimball,* v. *Lamprey,* 19 N. H. 215 ; *Strong,* petitioner, 20 Pick. 484 ; *Conlin* v. *Aldrich,* 98 Mass. 557 ; *American Railway Frog Company* v. *Haven,* 101 Mass. 398.

The original charter made it imperative on the village, at *every* annual meeting thereof, to elect the officers thereby provided for. The act of 1880 was equally imperative in this behalf, and provided that the ward-boxes should be held open until the voters of each ward had had a fair and reasonable opportunity to deposit their ballots. It is also to be noticed that this act created the office of auditors of accounts, and increased the number of trustees and lessened the number of fire wardens, and made a radical change in the manner of their election. This corporation is governmental in its functions, and invested with certain powers, rights, and privileges, that it may perform the duties cast upon it ; and it cannot, by refusing to perform those duties, be permitted to defeat the provisions and purposes of the law of its creation. At a meeting duly constituted and organized, a majority of the voters present, in the absence of any statute or other restraining authority to the contrary, have an implied right to adjourn the meeting to another time and place. But even this, we apprehend,

must be fairly done, and for no improper purpose. In *People* v. *Martin*, 5 N. Y. 27, PAIGE, J., says: "I think that the power of adjourning a town meeting to another time and place may, under peculiar circumstances, be oppressively exercised, and lead to a defeat of the public will. This power ought not to be exercised except in a case of extreme necessity." Chancellor KENT, in speaking of cases where the members of a corporation are directed to be, but are not, annually elected, says that the omission to elect does not take away the power incident to the corporation to elect afterwards, when the annual day has passed by some means *free from design or fraud.* Now, in the case at bar, it was by design that the last annual meeting was adjourned without day; and such adjournment was a fraud, both upon the law and upon the minority, who were in favor of abiding by the law. In *Kimball* v. *Marshall*, 44 N. H. 465, BELL, C. J., in speaking of assemblies upon which the law casts the performance of certain duties on particular days, as, in that case, the election of a clerk for the city of Nashua by the mayor, aldermen, and common council, says: "It must either be held that the body, once assembled, cannot adjourn till the business is done, or that so many as are ready to perform their legal duty shall be held competent to continue the meeting until the object is accomplished. Of these consequences, both may be held to follow under circumstances. The majority could make no legal adjournment to such a time as would defeat the performance of the prescribed duty; and a minority might keep the meeting in existence by adjournments till the duty was done." This we deem the only safe rule to adopt. Any other rule would open the door to great abuse of power, and place a loyal minority too much in the power of a disloyal majority.

The result is, we hold that the petitioners were duly elected trustees of said village at the annual meeting thereof held on the second Wednesday of January, 1882; and it is ordered that a writ of mandamus issue, commanding the said petitionees to forthwith deliver to the said petitioners, trustees as aforesaid, all and singular the books, papers, and articles of personal property of every description that they, the said petitionees, or any of them, have in their possession or under their control, belonging to said

village in its corporate capacity, or in any way appertaining thereto, or to the office of the trustees thereof; and that they, the said petitionees, and each and every of them, do absolutely desist and refrain from in any manner interfering with the petitioners, or any of them, in the exercise of their office of trustees as aforesaid.