CITY OF BATH *vs.* FRANKLIN REED and others, executors.

Sagadahoc.    Opinion June 11, 1886.

*Assessors of Bath, their election and qualification. Taxes against executors and administrators. Evidence. Exceptions. R. S., c 6, § 142.*

An assessor of the city of Bath was elected and qualified in 1880 for three years. In 1883 he was re-elected, but it was denied that he was qualified. In 1884, he resigned and was re-elected for two years, to fill the vacancy, and was duly qualified. *Held,*

    1. That if he was not qualified under the 1883 election, he would hold over under his previous election, and that his acts as assessor during that year were valid.

    2. That his resignation and re-election in 1884 were legal.

A tax was assessed against the "administrators of the estate of R," when the representative parties were executors and not administrators. *Held,* that this was not a fatal mistake, it being fairly within the scope of R. S., c. 6, § 142; and that parole evidence was admissible to show that the executors were the individuals intended to be taxed.

Exceptions will not be sustained to the admission of evidence which was so immaterial that it could do the excepting party no harm.

ON exceptions by the defendants.

The case is fully stated in the opinion.

*Francis Adams* and *W. Gilbert,* for the plaintiff, cited: Dillon, Mun. Corp. (3d ed.) § § 119, 120, 224; R. S., c. 3, § 32; c. 6, § 142; *Farnsworth Co.* v. *Rand,* 65 Maine, 19; *Tyler* v. *Hardwick,* 6 Met. 470; *Westhampton* v. *Searle,* 127 Mass. 502; *Boothbay* v. *Race,* 68 Maine, 351.

*C. W. Larrabee,* for the defendants.

The jury disagreed as to whether John W. Ballou was qualified as an assessor in 1883. On this point the case is no better for

plaintiff than if it were admitted that he was not qualified, and leaves the naked question whether or not, under the facts in the case he held over, from his election and qualification of 1880. The ruling of the court was "that if said Ballou was duly elected and qualified in 1880, as the records introduced may satisfy you, then he would hold that office until some one was elected and qualified in his stead."

We respectfully submit that this ruling was erroneous. That by the provision of § 6 of the city charter, a vacancy occurred in the board of assessors in three years from March 24, 1880, and that the re-election of Mr. Ballou to that office, March 26, 1883, recognized that fact. Ballou was again elected for the term of two years. The only evidence of resignation came from Mr. Ballou and from Seth O. Rogers. Ballou says, "I had resigned my election in 1883," which means that the resignation of Mr. Ballou was intended to effect his election of 1883. Rogers, the city clerk, says the resignation was in April, 1884. He could not hold the office under both elections at the same time.

The election in 1884 for two years, was not in accordance with the provisions of the amended charter, § 6, *supra*, each member elected to fill the place of one whose term expires shall hold office for the term of three years. If Mr. Ballou held over from 1880, there then was no need of his resignation before election in April, 1884. But the case finds that he was elected in 1883 for the said three years, in accordance with the charter, and his resignation, if it took effect upon any thing, must be referred to the last election. He was elected for two years to fill the vacancy caused by the resignation of John W. Ballou. What vacancy? Indisputably the two years remaining of his election in 1883, if Mr. Ballou had held over, then his election should have been for the three years, instead of two, next after the term of his election in 1880 expired. The action then taken was for the election then held. "No oath, no competency; no competency, there can be no legal assessment." *Dresden* v. *Goud*, 75 Maine, 299. The charter must govern in this case, and its provisions are imperative. Dillon Mun. Corp. 246.

This action is against Franklin Reed *et als.*, executors of the estate of Thomas M. Reed, and to support it plaintiff introduced the record of the assessment for both years, 1883 and 1884 alike, against " adm'rs," without naming them, of Thomas M. Reed's estate. No objection was raised to the explanation of the abbreviation used, " adm'rs," that it was intended for " administrators," but when the question was asked, "did you recognize any distinction between ' administrators and executors'?" it was seasonably objected to, and we submit that this evidence was admitted against the well established rule of evidence, and that this alone is sufficient to sustain defendants' exceptions. 1 Greenl. Ev. c. 15.

Assessment on real estate to heirs of a deceased testator, who had disposed of all his real estate by will, was held void. (*Inhabitants of Elliott* v. *Spinney*, 69 Maine, 31.) The distinction between heirs and devisees is not better defined than between administrators and executors.

The testimony of the assessors can have no bearing on this case further than to show that they intended to assess their taxes against the estate of the late Thomas M. Reed, and it would follow that both assessments are void. (*Fairfield* v. *Woodman*, 76 Maine, 549.) "Extrinsic circumstances also in case of ambiguity are of value in elucidating the true meaning." 2 Wheaton, Law of Evidence, § 940. But here there is no ambiguity, nothing doubtful, but a word of definite sense and meaning is torn from the text and another substituted. It can not be done.

FOSTER, J. The defendants are executors of the last will of Thomas M. Reed, late of Bath, deceased; and this action of debt is brought to recover of them taxes upon the personal property of the deceased, for the years 1883 and 1884. R. S., c. 6, § 175. The jury returned a verdict for six thousand seven hundred and sixty dollars and ninety cents.

The principal questions raised by the defendants' exceptions relate to the legality of the board of assessors for the city of Bath in each of those years, and to the designation of the defendants in the list of assessment.

By § 6 of the city charter, as amended by c. 538 of Special Laws of 1874, it is provided that there shall be a board of three assessors to be elected by the city council, one member of which board is to be elected annually, "and each assessor elected to fill the place of one whose term expires, shall hold office for the term of three years."

Together with other facts, about which there was no controversy at the trial, it appeared that John W. Ballou, at the annual meeting of the city council in 1880, was duly elected and qualified as one of the assessors of the city of Bath for three years. Concerning the election and qualification of the other assessors for that or subsequent years, no question was raised.

At the annual meeting of the city council in 1883, the said Ballou was re-elected and continued to act as assessor with the other members of the board for that year — but whether he ever qualified under that election by having the oath of office administered to him, was one of the strenuously contested questions of fact, and the jury, upon the special interrogatory propounded to them in relation thereto, were unable to find that the oath had been administered to him under the election of 1883.

1. The first instruction of the presiding justice to which exceptions are taken, relates to the board of assessors for 1883, and was to the effect that the assessor whose qualification was called in question, if duly elected and qualified in 1880, and if he failed to take the oath of office in 1883, was nevertheless a legal assessor in that year, as the term for which he was elected in 1880 would continue until some one was elected and qualified in his stead.

Prior to the amendment of 1874, it was provided by § 6 of the city charter that the assessors were to be appointed annually. Although there was no express provision in that section for the continuance beyond the year, yet, there being no restrictive provision, the general statute applied. That statute reads thus : " The assessors and subordinate officers of cities, when their charters do not otherwise provide, shall be chosen on the second Monday of March, annually, or as soon after as practicable, and hold their offices one year therefrom, and until others are chosen and qualified in their stead." R. S., c. 3, § 32.

Had there been no amendment changing the term from one year to three, there could be no doubt but that the officer elected for one year would hold over until the election and qualification of some one in his stead. *Dow* v. *Bullock*, 13 Gray, 138.

In the case of *Weir* v. *Bush*, 4 Litt. (Ky.) 433, it was held that where by statute an officer holds for a given term, and until his successor is elected and qualified, he continues in office until his successor is duly elected and qualified, though from failure to elect or from other causes, it is after the expiration of the term.

Even in the absence of any charter or statute provision that the officer of a municipal corporation shall hold over until his successor is elected and qualified, the doctrine of the American courts has strongly inclined to guard against lapses, sometimes unavoidable, and to adopt the analogy of other corporate officers who hold over till their successors are elected, unless the legislative intent to the contrary is clearly manifested. Dillon, Munic. Corp. § 158; *Chandler* v. *Bradish*, 23 Vt. 416; *Tuley* v. *State*, 1 Ind. 502.

In the case last cited, which was an action upon an official bond against sureties, the court say : "But where by the constitution of the corporation, the officers are elected for a term, and until their successors are elected and qualified, or where they are elected 'for the year ensuing,' and the charter or organic law contains no restrictive clause, the officers may continue to hold and exercise their offices, after the expiration of the year, until they are superseded by the election of other persons in their places."

In Connecticut it was held by Hosmer, C. J., in *McCall* v. *Byram M'f'g Co*. 6 Conn. 428, that an officer elected for "the year ensuing" is, in the absence of any other restrictive provision, entitled to hold beyond the year, and until he is superseded by the election of another person in his place. See *Cong. Soc.* v. *Sperry*, 10 Conn. 200; *Kelsey* v. *Wright*, 1 Root, (Conn.) 83; *People* v. *Runkel*, 9 Johns. 147; *Trustees* v. *Hills*, 6 Cow. 23; *Currie* v. *Medical Assurance Soc.* 4 Hen. and M. (Va.) 315.

The English courts early adopted a stricter rule in reference to the office of mayor or other head officer of the old corpora-

tions in England, holding that the office was annual and expired at the end of the year. But in the case of *Foot* v. *Prowse*, Str. 625, it was decided in the Exchequer Chamber, and afterwards affirmed in the House of Lords, that though aldermen of Truro were to be elected annually, those words were only directory, and the aldermen continued to be such after the year, and until others were elected.

So in the case of *The Queen* v. *Corporation of Durham*, 10 Modern, 146, the court of King's Bench said that though a town clerk was to be annually elected, he remains town clerk after the year and until another is chosen; but if it be that he was to be elected for one year *only*, his office would have expired at the end of the year.

We think a correct decision may be reached, however, in the case under consideration, when we compare the amendment with the original charter. The only change of any importance was in the number of years for which the assessors were to be elected. The term was changed from one year to three. Neither the original nor the amended charter expressly restricted the duration of the office to the exact time. It is evident, when we consider the object to be attained as well as the language of the amendment, that all the change intended was the substitution of a triennial for an annual election. The statute provision to which we have referred, and which certainly, prior to the amendment of the charter, was to be read along with it, infusing vigor and strength into its terms, clearly indicates and expresses the legislative intent to provide beyond a peradventure against any lapse of the office of assessors in cities, by reason of a failure either in the election or qualification of those officers at the expiration of the prescribed term of office. And if, upon examination of the charter, it might be said that the assessors are subordinate officers, then by § 4 of the charter, express provision is made whereby such officers shall hold their office until others shall be elected and qualified in their stead.

2. Nor do we think that exceptions should be sustained to the instruction in relation to the resignation and election of said Ballou in 1884. The fact that he had continued to act as assessor

during the previous year would not preclude him from resigning whenever he saw fit. There was evidence of such resignation. That the city council by treating the office as vacant and proceeding immediately to fill it by re-electing him to it, as appears by the records, may well be considered as evidence of the acceptance of such resignation. The election for the term of two years was properly made. An election for three years applies only to the case of one who is " elected to fill the place of one whose term expires."

3. By R. S., c. 6, § 14, par. 8, "the personal property of deceased persons, in the hands of their executors or administrators, not distributed, shall be assessed to the executors or administrators in the town where the deceased last dwelt."

The assessment of the taxes sought to be recovered in this action is not against these defendants by name. The assessment is in these words: "Reed, Thomas M., adm'rs of the estate of," and which by proper transposition means nothing more nor less than that the assessment was made to the administrators of the estate of Thomas M. Reed. The defendants were not in fact administrators, but were executors. This evident mistake in the designation of the defendants' representative capacity is fairly within the scope and spirit of § 142, c. 6, R. S., and is one of the evils intended to be remedied by it. By that statute the legislative intention may be clearly discerned, and by it, it is as emphatically and conclusively expressed, that no error, mistake, or omission of the assessors or officers, shall render an assessment void,—but the tax payer suffering in his legal rights on account of such error, mistake or omission, is remitted to a suit against the town for redress. *Boothbay* v. *Race*, 68 Maine, 356.

The language of this court in the case of *Farnsworth Co.* v. *Rand*, 65 Maine, 23, applies with appropriate force in this connection. "If the party is liable to taxation," says BARROWS, J., "and is in fact the party whom the assessors intended to tax, it would be manifestly unjust that he should escape taxation for so trivial a cause as an error, mistake or omission in his designation, when his identity with the party designed to be taxed can be established."

Parol evidence was therefore admissible and properly received to show who were intended to be taxed by the words, "Reed, Thomas M., adm'rs of the estate of," and as to the identity of the defendants with the persons intended to be designated by these words. *Tyler* v. *Hardwick*, 6 Met. 474; *Westhampton* v. *Searle*, 127 Mass. 504; *Farnsworth Co.* v. *Rand*, 65 Maine, 23, 24.

This case is clearly distinguishable from the case of *Elliot* v. *Spinney*, 69 Maine, 31, in which the tax was upon real estate, and the assessment was in fact made against parties not legally liable. In that case the only question was whether certain real estate was rightfully taxed to the heirs of the deceased, and against whom the suit was brought, when it had in fact been given to devisees. Here, the action is for taxes upon personal property of the deceased, and against parties legally liable under the statute.

Nor is this case like that of *Fairfield* v. *Woodman*, 76 Maine, 549, where both real and personal property was taxed, not to the defendant in the action, but to the "estate of" the deceased, when there was no statute authorizing the assessment of the tax to the "estate of" the deceased.

In the case of *Tyler* v. *Hardwick*, *supra*, the action was to recover back a tax paid by compulsion where neither the christian nor surname was borne on either the valuation or the assessment lists, when made and deposited in the assessors' office, nor when the tax was committed to the collector. SHAW, C. J., who drew the opinion of the court, there recognized the importance that those liable to taxation should bear their just proportion of the public burdens, as well as share the benefits of taxation upon others, and that they should not escape by subtle technicalities, or slight mistakes which the law makers had declared should not vitiate proceedings of this nature, and he there held that the statute covers all cases of error in the name and applies to cases where the mistake arises from the name being omitted as well as to cases of misnomer. "The statute," he said, "is plain and explicit, and covers all cases of error in the name, and was intended, we think, to apply to a case where the name is

mistaken by omitting, as well as by adding or by misnaming. The only things required are, that the person shall be liable to taxation, and be in fact the person intended to be taxed under such designation. These facts must of necessity be proved by evidence *aliunde*. The fact of the identity of the party, and the intention of the assessors, must in general be proved by them."

Now while it may be true that this statute of our own state may not be in terms so specific as that of Massachusetts, it has received a construction and has been held by this court in *Farnsworth Co.* v. *Rand, supra,* where the above case was cited with approval by Mr. Justice BARROWS, to be even more comprehensive, and to apply with equal force and precision to actions of this kind.

Again, it must be borne in mind that this is an action against the parties made liable by law for the payment of taxes properly assessed upon property in their hands. Strict construction in matters of this kind are properly applied to prevent forfeitures. But, as was said by PETERS, C. J., in the very recent case of *Cressey* v. *Parks,* 76 Maine, 534, "where forfeitures are not involved, proceedings for the collection of taxes should be construed practically and liberally."

4. The remaining exception to which our attention is called, relates to the admission of the question put to the assessors by the counsel for the plaintiff,—whether or not in making the assessment they recognized any distinction between the words administrators and executors. The question is immaterial. They were not asked whether there was in fact any distinction between the words, but simply whether they recognized any distinction. It was not admitting evidence by parol to vary or control that which is written. Whichever way the question may have been answered was wholly immaterial, and certainly could do the defendants no harm. *Harriman* v. *Sanger,* 67 Maine, 442.

*Exceptions overruled.*

PETERS, C. J., WALTON, VIRGIN, LIBBEY and HASKELL, JJ., concurred.