HEZEKIAH S. RUSSELL *vs.* HIRAM B. WELLINGTON & others.

Berkshire.     June 2, 1892. — July 1, 1892.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Mandamus — Notice of Special Meeting of City Council — Provision as to Election directory.*

The St. of 1889, c. 411, § 9, provides that the mayor of a city "may call special meetings of the city council or either branch thereof when in his opinion the interests of the city require it, by causing notice to be left at the usual place of residence of each member of the board or boards to be convened." *Held,* on a petition for a writ of mandamus to determine the title to a municipal office, that a special meeting of each branch of the city council was duly called by the clerk of each branch, at the request of the mayor, depositing in the post-office notices addressed to each member, it appearing that every member received a written or printed notice who could possibly have received such notice if the statute had been strictly complied with. KNOWLTON, J. dissenting.

When, by city charter, definite bodies of persons like the two branches of a city council, which meet often during the municipal year, are authorized and directed to elect an officer in concurrence in a certain month or at a certain time, and there is no prohibition in the charter against electing him at any other time, and the office is one which the charter plainly contemplates should be annually filled by

a new election, the provision that the election shall be held in a particular month or at a particular time must be regarded as directory.

The writ of mandamus may be resorted to to settle the dispute of two rival claimants of a municipal office.

PETITION for a writ of mandamus to compel the respondent Wellington to refrain from attempting to act as a member of the board of public works of the city of Pittsfield, and to compel the respondents Daly and Jones to recognize and receive the petitioner as a member of that board, and to act with him as such in the duties pertaining thereto.

Hearing before *Barker*, J., who reserved the case, upon the petition, answer, and agreed facts, for the determination of the full court.

The petition recited that the St. of 1889, c. 411, § 26, provides that " the city council first elected under this act shall, as soon as may be convenient after its organization, elect by concurrent ballot three persons, legal voters of said city, to constitute a board of public works, to serve, one for three years, one for two years, and one for one year from the first Monday of February then next ensuing, and until their respective successors are elected; and thereafter the city council shall annually, in the month of January, elect in the same manner one person, a legal voter of said city, to serve on said board for the term of three years from the first Monday of February next ensuing, and until his successor is elected"; that in January, 1891, the city council duly elected three persons to constitute the board, the respondent Edward D. Jones for three years, the respondent Joseph H. Daily for two years, and the respondent Hiram B. Wellington for one year from the first Monday of February, 1891; " that, at a meeting of the board of aldermen duly held on the 8th day of February, 1892, notice was received from the common council of the election on the part of that body of the respondent Wellington as a member of the board of public works; that it was voted to proceed to the election of a member of the board of public works for three years; that a ballot was taken in which four votes were cast for your petitioner, and one vote was cast for the respondent Wellington; that your petitioner was declared elected member of the board of public works for three years on the part of said board of

aldermen, and the action of said board was sent down to the common council for concurrence; that on the said eighth day of February last a meeting of said common council was duly held; that notice was therein received from the board of aldermen of the election of your petitioner by said board as member of the board of public works for three years; that it was voted to proceed to the election of a member of the board of public works; that a ballot was taken in which seven votes were cast for your petitioner, and five votes were cast for the respondent Wellington, and that your petitioner was declared elected a member of the board of public works for three years in concurrence with the board of aldermen; that on the ninth day of February last your petitioner received from the city clerk of said city a certificate of his election as member of the board of public works of said city for three years from the first Monday of February last; and that on the same day he appeared before said clerk and made and subscribed an oath for the faithful discharge of the duties of said office."

The answer set forth that the meetings of the board of aldermen and common council of February 8, 1892, were special meetings, not properly called according to the St. of 1889, c. 411, § 9, which provides that "the mayor . . . may call special meetings of the city council or either branch thereof when in his opinion the interests of the city require it, by causing notice to be left at the usual place of residence of each member of the board or boards to be convened"; and that, under § 26 of that statute, the city council had no authority to elect a member of its board of public works after the expiration of the month of January; that, as appears from the allegations of the petition, there was no election of a member of the board of public works by concurrent ballot of the city council during the month of January, 1892; and that, in consequence thereof, the respondent Wellington continued to be a lawful member of the board.

The agreed statement of facts recited that the clerk of each branch of the city council, at the request of the mayor, deposited in the post-office notices, dated February 5, 1892, addressed to each member of the respective branches of the city council, stating that a meeting would be held "on Monday, February 8, 1892, at eight o'clock P. M."; that twelve of the fourteen mem-

bers of the common council met at the time and place named in said notices, and every member of said city council actually received said notice before the time of said meeting, with the exception of one member, who, three days before the sending of the same, had left the city on an extended journey to California, and that it was at the meeting so held that the petitioner is alleged to have been elected on the part of said common council; and that five of the members of the board of aldermen met at the time and place appointed in the notice.

The case was argued at the bar in June, 1892, and afterwards was submitted on the briefs to all the judges.

*W. F. Hawkins*, for the petitioner.

*W. Turtle*, for the respondent Wellington.

FIELD, C. J.   The decision of this case depends upon the proper construction of the first part of § 26, and of a clause in § 9 of the charter of the city of Pittsfield.   St. 1889, c. 411. The clause in § 9 is: " He [the mayor] may call special meetings of the city council or either branch thereof when in his opinion the interests of the city require it, by causing notice to be left at the usual place of residence of each member of the board or boards to be convened."

The original charter of the city of Boston, St. of 1821, c. 110, § 12, gave the mayor the power to summon meetings of the board of aldermen and of the common council, but did not provide in what manner the members were to be summoned.   The charter of the city of Salem, St. of 1836, c. 42, § 7, provided that the mayor might call special meetings by " causing a summons or notification to be left at the usual dwelling place of each member of the board or boards to be convened," and all subsequent charters, with the exception of the charter of the city of Lowell, contain similar provisions, the language often being the same as in the charter of the city of Pittsfield.   The charter of the city of Lowell, St. of 1836, c. 128, § 6, was in this respect like that of the city of Boston.   The St. of 1854, c. 448, being an act to revise the charter of the city of Boston, provided, in § 46, that the mayor " shall cause suitable notice, in writing, of such meetings to be given to the respective members of said boards."   If a notice or summons were required to be served personally on every member, it would often be impossible to do this, as it might be

that some one or more of the members could not be found. This seems to be the reason why the form generally adopted was that notice should be left at the usual dwelling place or place of residence of each member. This implies that the notice should be either printed or written, and that, if seasonably left at the member's place of residence, it should be a good notice, whether the member received it or not. But a written or printed notice, seasonably delivered to a member personally, must, we think, be as good a notice as one left at his place of residence, because the object of leaving notice at the place of residence is that the member may receive it, although it was meant that this method of serving notice should be sufficient, even if the member did not receive it. The statute does not provide that the notice should be left by a constable or by any particular person, and if left at the place of residence by a letter carrier, this would undoubtedly be sufficient. If the notice is received by the member in the street or elsewhere, and is carried by him to his place of residence and left there, this would be within the terms of the statute, and we are of opinion that, if the notice was seasonably received by the members personally through the post-office, this is sufficient notice. We do not regard the provision requiring notice to be left at the place of residence as mandatory in any such sense as to exclude proof of service of the notice on the members personally, which is the most effectual form of serving notice. *Commonwealth* v. *Smith*, 132 Mass. 289. Dillon Mun. Corp. §§ 262–264. It is manifest that leaving notice at the place of residence of the member who, " three days before the sending of the same, had left the city on an extended journey to California," would have been useless. A notice was sent to him through the post-office, but it does not appear whether it was or was not seasonably received at his usual place of residence. Indeed, it does not appear that he had a usual place of residence within the city; but this perhaps may be presumed. We think that it appears in this case that every member received a written or printed notice of the special meeting who could possibly have received such notice if the statute had been strictly complied with, and it is not contended that the notices were not received in due season, or that they were not in proper form. There is nothing in the charter of the city of Pittsfield

which requires that the subjects to be acted on at a special meeting of the city council should be specified in the notice, or that the notice should be left at the place of residence of a member any definite length of time before the time appointed for the meeting, as there is in the charter of the city of Quincy. St. 1888, c. 347, § 12. The meeting having been properly called, the city council could transact any business which might lawfully be brought before it. See *The King* v. *Pulsford*, 8 B. & C. 350.

The only remaining question which deserves notice is whether an election could be had in the month of February, the city council having tried to elect in concurrence a member of the board of public works in the preceding month of January, and having failed to make an election. The St. of 1889, c. 411, § 26, requires the city council, after the first election, to elect by concurrent ballot one person annually in the month of January to serve on the board of public works " for the term of three years from the first Monday of February next ensuing, and until his successor is elected." This board of public works is composed of three persons, who at the first election were elected " one for three years, one for two years, and one for one year from the first Monday of February then next ensuing, and until their respective successors are elected." Somewhat similar provisions are contained in most of our city charters. When by city charter definite bodies of persons like the two branches of a city council, which meet often during the municipal year, are authorized and directed to elect an officer in concurrence in a certain month or at a certain time, and there is no prohibition in the charter against electing him at any other time, and the office is one which the charter plainly contemplates should be annually filled by a new election, we think that the provision that the election shall be held in a particular month or at a particular time must be regarded as directory. It must necessarily sometimes happen that an election in concurrence cannot be had within the month or at the time mentioned, and the essence of the thing to be done is that there should be an election, but the time relates only to the regular and orderly change of officers according to the scheme established by the charter. There is nothing in this charter to indicate that the designation of time was intended as a limitation of the power of the city council, and there are sub-

stantial reasons why the two bodies charged with the duty of electing an officer in concurrence should take the time necessary to come to an agreement. On the facts agreed, a majority of the court are of opinion that it appears that the petitioner was duly elected a member of the board of public works of the city of Pittsfield for three years from the first Monday of February, 1892. Mandamus is a proper remedy. *Keough* v. *Board of Aldermen of Holyoke*, 156 Mass. 403.

<em>Writ of mandamus to issue.</em>

KNOWLTON, J. . I do not concur in the opinion of the majority of the court. In regard to calling special meetings of a city council, the rule is, that, " if the charter provides a method by which the notice shall be served, its provisions must be strictly obeyed." Dillon Mun. Corp. § 263. This doctrine, in its application to meetings called for the transaction of the business of towns, school districts, and municipal corporations, runs through a long line of cases, and in regard to it, so far as I am aware, there has hitherto been no conflict of authority. *Rex* v. *May*, 5 Burr. 2681, 2682. *Rex* v. *Theodorick*, 8 East, 543. *Rex* v. *Langhorn*, 4 Ad. & El. 538. *Regina* v. *Whipp*, 4 Q. B. 141. *Perry* v. *Dover*, 12 Pick. 206. *Reynolds* v. *New Salem*, 6 Met. 340. *Wiggin* v. *Freewill Baptist Church*, 8 Met. 301. *Rand* v. *Wilder*, 11 Cush. 294. *Rideout* v. *Dunstable School District*, 1 Allen, 232. *Lord* v. *Anoka*, 36 Minn. 176. *Harding* v. *Vandewater*, 40 Cal. 77. *Moor* v. *Newfield*, 4 Greenl. 44. *Jordan* v. *Lisbon School District*, 38 Maine, 164. *Hunt* v. *Norwich School District*, 14 Vt. 300. *Pratt* v. *Swanton*, 15 Vt. 147. *Sherwin* v. *Bugbee*, 17 Vt. 337. *Bloomfield* v. *Charter Oak Bank*, 121 U. S. 121. *Hayden* v. *Noyes*, 5 Conn. 391. *Bethany Congregational Society* v. *Sperry*, 10 Conn. 200.

*Commonwealth* v. *Smith*, 132 Mass. 289, is not at variance with this rule, for the meeting in that case was for a State election, and the time for holding it was fixed by the laws of the Commonwealth.

The calling of the meeting to which the statute in this case relates is the giving of notice to the members that a meeting will be held at a designated time and place, not the mental act of determining upon a meeting at that time and place. The mayor

" may call special meetings . . . by causing notice to be left at the usual place of residence of each member of the board or boards to be convened." As I read the statute, " causing notice to be left at the usual place of residence " is calling the meeting. By doing this the mayor may " call " a meeting, and the statute provides no other way for calling one. Except as the statute gives authority, neither the mayor nor anybody else can call a special meeting. It is not as if the statute said the mayor may call a meeting by determining that one shall be held, and afterwards shall give reasonable notice of the call, and leaving a notice at the usual place of residence of each member shall be deemed reasonable notice. Under the statute a meeting may be " called " by doing a certain thing, and there is no authority in anybody to " call " it otherwise.

There is a good reason for the rule which has been laid down by the authorities. If a meeting is legally called, there is jurisdiction to transact business, and it is the duty of members who are properly notified to attend it. Often there may be a difference of opinion among members on the question whether a special meeting should be called, or in regard to the time for holding it. It may be impossible or inconvenient for a member to attend at a particular time. When the statute provides a method for calling it, each member knows that if this method is adopted it is his duty to be present, and that if it is not adopted the meeting is not legally called, and he may safely stay away.

In the present case a simple way for calling meetings is provided. This way it is easy to follow. If the rule as stated above were adhered to, there would never be difficulty in knowing whether a meeting of a city council is legal, and what the rights and duties of the members are in regard to it. But if the doctrine contended for by the petitioner is to prevail, it seems to me that the validity of the most important transactions of cities will be left to the uncertainty and doubt arising from oral testimony in regard to the methods and the effect of the methods which a mayor at any time chooses to adopt in calling a special meeting.

It has been held that when all the members of a city council assemble and unanimously agree to do business in their official capacity, it is immaterial whether a meeting was called or not.

But nothing less than the unanimous consent of the whole body can give validity to proceedings at a meeting which is not legally called. *Rex* v. *Theodorick*, 8 East, 543. *Stow* v. *Wyse*, 7 Conn. 214. Dillon Mun. Corp. § 264.

The opinion of the majority seems to assume that the mental act of the mayor in determining upon a meeting is calling it under the statute, and that, when it has been so called, it is enough if the members receive in some form reasonable notice of the mayor's determination. I think the logic of the opinion makes it immaterial whether the notice is given orally or in writing, although it is said that the law "implies that the notice should be either printed or written." It will hardly be contended that more effect should be given to this implication than to the express statement of the statute, that the calling of a special meeting shall be "by causing notice to be left at the usual place of residence of each member," etc.

If the statute might be departed from as to the mode of calling special meetings, provided reasonable notice of the time and place of an intended meeting in some way reached every member of the board, I think that doctrine would not apply when the substituted notice failed to reach one or more of the members, as it did in this case. *Kynaston* v. *Shrewsbury*, 2 Strange, 1051, and cases *supra*. It seems to me that a decision in favor of the petitioner must stand upon the ground that a mayor, in calling a special meeting, may wholly disregard the method prescribed by the statute, and may adopt any other method which pleases him, if he gets timely notice of his purpose to most of the members, and if it is shown that those who receive no notice were so situated that they could not have attended the meeting if it had been called as required by the statute. The questions arising under a practice of this kind would necessarily be decided on oral testimony. I do not think such a decision is allowable under the authorities, or that it gives effect to the intention of the Legislature.

In my opinion, the meeting of the city council was not legally called, and the petition should be dismissed.