# CHARLESTON.

STATE *ex rel* J. P. KIRK *et als v.* L. V. C. CURRY, *Mayor.*

(Nos. 5349-5355 inclusive.)

Submitted January 20, 1925.   Decided January 27, 1925.

1. MUNICIPAL CORPORATIONS—*Members of Common Council Continue Until Successors are Elected and Qualified.*

    Members of a common council of a town, chartered under chapter 47, Code, continue in the discharge of their duties, until their successors are elected, or appointed and qualified. (p. 77).

    (Municipal Corporations, 28 Cyc. p. 426.)

2. MANDAMUS—*Mandamus Lies to Compel Common Council of Town to Call Election to Elect Officers if Annual Election is Not Held on Date Provided; Election of Officers of Town or Village Held in Pursuance of Mandamus Must Be Held in Manner Provided by Law.*

    Where for any reason the annual election of officers in such corporation shall not be held on the first Thursday in January, as provided by section 17 of chapter 47, Code, in a proper case, mandamus lies to compel the common council of such town to call an election for the purpose of electing officers for such town or village, which election in all respects shall be held in the manner provided by law.   (p. 77).

    (Mandamus, 26 Cyc. p. 272.)

    (NOTE:   Parenthetical references by Editors, C. J.—Cyc.   Not part of syllabi.)

Original petitions by the State, on relation of J. P. Kirk, of G. O. Ruble, of Floyd Kirk, of Grant York, of Ursell Maynard, of Wilson Stepp, and of Ira Cooper, for mandamus to be directed to L. V. C. Curry, Mayor of the Town of Kermit, and others.

*Peremptory writ awarded.*

*James Damron* and *G. W. Crawford,* for petitioners.

*G. R. C. Wiles,* for respondents.

WOODS, JUDGE:

The relators, seven in number, were Republican candidates for various municipal offices of the town of Kermit at the election held in that town on the first day of January, 1925. The respondents, constituting the common council and *ex officio* the board of canvassers of said town, refused to canvass the returns of the election and to declare the result thereof. The relators therefore file their several petitions for writs of mandamus to compel respondents to convene as a board of canvassers, to canvass the returns, and to declare and certify the election of relators to their respective offices. Three of the respondents, a minority of the common council, file an answer admitting substantially all of the averments of the petition and practically acquiescing in the relief sought. Four respondents, the majority of the council, answer, admitting that they refused to canvass and declare the result of the election, because of its alleged illegal character, and allege that on January 7, 1925, sitting as a common council, they issued a formal call for a new election to be held on January 22, 1925.

Both the petitions and returns recite numerous matters respectively defending and attacking the validity of the election of January first.

By stipulation it was agreed that as the seven proceedings involve identical facts and issues, pleadings and proof be made up on the petition of Wilson Stepp only, and that our determination of his petition should conclude all of the cases.

Accordingly, Stepp files an amended petition. In it he adopts the averments of the original petition, and alleges particularly in addition that the call of the common council for an election to be held January 22, 1925, is illegal and fraudulent, the charge being that the meeting at which such call was issued was not a regular called meeting of the council in the town of Kermit, but that it was held in the city of Williamson, thirty miles distant, by the four majority mem-

bers of the council without notice to the three minority members thereof. The prayer of the amended petition is that if we conclude that no legal election was held on January 1, 1925, we award a peremptory writ directing respondents to meet and call a special election according to law, and that there be prepared proper ballots listing the candidates of the People's Party, the Citizens Party, and the Republican Party, the three principal parties in the town.

The case for relators, as made out by the original and amended petition, is substantially as follows:

It appears that the two political parties polling the greatest number of votes at the municipal election of 1924 were the Peoples Party and the Citizens Party, and that by virtue of that election the mayor, Curry, and the majority of the common council are members of the Citizens Party. Petitioner alleges that more than 20 days prior to January 1, 1925, both of the above parties and the Republican Party, at mass conventions, nominated their candidates for the election of that date, and certified their nominations to the recorder, by whom they were filed. The Republican Party and the Peoples Party nominated the same candidates for each office. In preparing the ballots, however, the board of ballot commissioners omitted therefrom the name of the Peoples Party or any of its candidates, and petitioner alleges that this omission was part of a conspiracy of the Citizens Party, it being thought by them that many citizens of the Democratic Party faith would refuse to vote for candidates under the Republican Party label. Petitioner alleges further that the mayor, Curry, although not a candidate for re-election, conceived the scheme of preventing an election on January 1, 1925, thus perpetuating himself in office. To this end it is averred that although many voters of all parties presented themselves at the regular polling place on election day, one Harrison Dingess, the custodian of the printed ballots, at the instance of Curry and other violent supporters of the Citizens Party, failed to bring the ballots to the polling place, and that the election commissioners, all of whom were members of the Citizens Party, remained away and refused to conduct the election; that they in fact, at

Curry's suggestion, announced that no election would be held. Petitioner alleges that thereupon, by a *vive voce* vote, the persons at and about the voting place named election officers, prepared typewritten ballots, and established a voting place in a building 50 feet distant, and held an election at which all the Republican candidates were overwhelmingly elected, the Citizens Party refusing to take any part in the proceedings.

The four respondents, members of the Citizens Party, tell a different story in their return. Space forbids a detailed account of their version of the affair. Suffice to say, they deny the charges that the election officers were all appointed from their ranks, deny that the nominations of the Peoples Party were certified to the recorder 20 days prior to January 1, 1925, and deny the averments relative to a scheme on the part of Mayor Curry to prevent an election and thus perpetuate himself in office. The facts as they present them are that on the morning of election day a crowd of armed men, led by S. A. Hawkins, invaded and surrounded the town hall, making it known that they proposed putting in new election officials; that, upon being requested to vacate, Hawkins and his supporters assumed and maintained a threatening attitude, and so intimidated the election officials as to frighten them away. After repeated attempts to settle and compromise differences, Mayor Curry, upon the advice of a number of citizens, to avoid strife and possible bloodshed, proclaimed a postponement of the election.

As to the election actually held, respondents allege that it was illegal and void, being framed and conducted solely by and for the members of the Republican and Peoples parties without legal sanction. They therefore justify the refusal of the common council, sitting as a canvassing board, to canvass and declare the results of the fraudulent election, and allege the regularity of the call of the special election to be held January 22, 1925.

We have indicated the striking difference in the positions taken by petitioner and respondents as evidenced by their pleadings. The many affidavits filed by them serve but to accentuate the conflict. Affiants for petitioner proclaim that

they saw nothing to indicate an intimidation of those appointed to conduct the election. They do say that by *vive voce* vote they selected Hawkins as clerk to represent the Republican and Peoples parties, presumably in the place of Dingess, who failed to appear, but that officials appointed by the Citizens Party absolutely refused to serve with him. They swear to a number of circumstances supporting petitioner's averments that the Republican and Peoples parties were not represented on the election board, and as to Mayor Curry's plan to avert the election.

All such affidavits find ready answer in those filed by respondents. The tenor of all of them is that members of the Republican and Peoples parties, armed and threatening personal violence, sought to force the regularly appointed election officers to admit Hawkins as an election clerk.. One man in particular, a state policeman on leave of absence from regular duty, and armed with two revolvers plainly visible, took an active part in the demonstration in behalf of the Republican voters.

One point is certain, the members of the Citizens Party took no part in the voting. Of an average of about 165 votes cast for the various offices, no candidate of that party received more than six votes. They claim the election was carried on without general notice, in a private room, in charge of Republican Party voters, by officers appointed by those voters, and that they as members of the Citizens Party were practically debarred from participation.

All that we can say is that there are a multitude of affidavits supporting the allegations of both the relators and the respondents.

Whether or not the election would have been legal had it been conducted by the officials originally appointed, and with the regularly printed ballots, is of no consequence. It was not so carried on. The only point is whether the election as conducted will stand, and whether there was such conduct on the part of the Citizens Party in power to reasonably incite or morally justify the actions of the voters of the Peoples Party and Republican Party. That is a question upon which the

evidence is in hopeless conflict. Nor can we determine with assurance whether the Citizens Party voters were intimidated or willingly refrained from participation. The burden of proof in the case is upon the relators, and, being unable to determine from the evidence that the election as held was legal in all respects, we are therefore unwilling to grant the prayer of the original petition. We do hold, however, that the people should not be prevented by partisan strife from having the opportunity to choose, in manner provided by law, their municipal officers.

Members of a common council, of a town, chartered under Chapter 47, Code, continue in the discharge of their duties until their successors are elected, or appointed and qualified. Mandamus will lie to compel them to perform their duties. *Westfall* v. *Blair, Mayor,* 87 W. Va. 564, 105 S. E. 830, 19 A. L. R. 35. Where, for any reason, the annual election in such corporation shall not be held on the day provided by law, mandamus may be invoked, in a proper case, to compel the common council holding over to call a special election. *Gay* v. *City of Buckhannon,* 96 W. Va. 380, 123 S. E. 183; *Heironimus* v. *Town of Davis,* 76 W. Va. 587. We, therefore, grant the alternative prayer as prayed for in the amended petition.

The peremptory writ, so defined, is awarded.

*Peremptory writ awarded.*