STATE OF MAINE

BY INFORMATION OF

ALEXANDER A. LAFLEUR, ATTORNEY GENERAL

*vs.*

ROLAND L. MARCOTTE

LUCIEN A. DRAPEAU

PAUL L. GENEST

DONAT E. BOISVERT

RAYMOND L. POULIN

ROBERT CARON

AIME J. LAUZE

ROBERT W. CARON

Androscoggin.   Opinion, June 4, 1952.

*Alexander A. LaFleur, Attorney General,* for State.

*Frank M. Coffin,* for Defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

FELLOWS, J.   This is an information in the nature of quo warranto brought by Alexander A. LaFleur, Attorney General of Maine, against Roland L. Marcotte, Lucien A. Drapeau, Paul L. Genest, Donat E. Boisvert, Raymond L. Poulin, Robert Caron, Aimee J. Lauze, Robert W. Caron, who claim to be the duly elected Mayor and Aldermen for the city of Lewiston and acting as such since March 17, 1952. The information alleges that the respondents lack authority to act as such officials of Lewiston because the charter of the city of Lewiston (Chapter 8 of the Private and Special Laws of Maine 1939, amended by Chapter 86 of the Private and Special Laws 1943) provides in Article II, Section 1, that "an election shall be held on the 3rd Monday in February of each year, at which the qualified voters of the city

shall ballot for a mayor and the qualified voters of each ward shall ballot for a member of the board of aldermen," and the information states that in violation of this section no election was held on the 3rd Monday in February, 1952 but that "an alleged election was attempted to be held on the 4th Monday in February 1952 under color of which election the respondents claim to have been elected or to have qualified for a run-off election held on the 1st Monday of March, 1952."

Notice was ordered on the quo warranto information by the Superior Court for Androscoggin County. The respondents appeared, and filed their joint and several pleas, or answers, to the information. The information asks "by what warrant they claim to hold and execute the offices of mayor and aldermen?"

After the filing by the respondents of the answers, or pleas, the Attorney General filed a general demurrer to them. This demurrer, therefore, admits the truth of the facts stated by the respondents. The case is reported to the Law Court for final judgment.

The facts admitted by the demurrer are, that on the 3rd Monday of February, 1952 (February 18, 1952) the date on which the annual election was to be held as provided in Article II, Section 1 of the Charter, the entire area of the city was experiencing the most severe blizzard in a period of sixty years. The snow storm commenced on February 17th and had so increased in severity by 8 A.M. on February 18, when the polls were to be opened, that all of the walks, streets and ways in the city were not passable by pedestrian or vehicle. Access to the polling places was impossible because of the storm. Wardens and ward clerks for most of the polling places were unable to report for duty at any time during the voting period between 8 A.M.

and 7 P.M. The continued efforts of the city clerk during the day to obtain the presence of legal voters in most of the polling places, in order to hold meetings and adjourn the same, met with little success because voters were unable to get to the polling places. The city clerk himself found it impossible to deliver ballots to polling places. All transportation utilities throughout the city were unable to operate. Approximately three feet of snow, with drifts of greater depth, made industry, business, schools, and the opening of State, County, and Town offices impossible for the day. The chief of the fire department declared an emergency to exist because equipment could not be moved for any distance. By reason of this "snowbound" condition that existed during all of February 18, 1952, no votes were cast at any polling place, although the number of registered voters in the city was 21,252. No election was, or could be, held because of the unprecedented storm.

The municipal officers of Lewiston immediately called an election for February 25, 1952 and gave notice. On February 25, 1952 an election was held and 13,100 ballots were cast. As a result of the election held on February 25, 1952 the following respondents were elected to the office of aldermen: Lucien A. Drapeau, Paul L. Genest, Donat E. Boisvert, Raymond L. Poulin, Robert Caron, and Robert W. Caron.

No person having received a majority of the votes cast for mayor, or for alderman of Ward 6, at the election on February 25, 1952, it was necessary that a "run-off election" be held, in accordance with Article II, Section 2 of the Charter of the City of Lewiston, on the "1st Monday of March next thereafter." Accordingly the run-off election was held on March 3, 1952, at which election, in accordance with the Charter provisions, 13,565 citizens voted and the following respondents were elected: Roland L. Marcotte,

Mayor,—Aime J. Lauze, Alderman of Ward 6. On March 17, 1952, each and all of the respondents took their respective offices, having been duly sworn, and are carrying out the duties thereof.

The Law Court is asked, in the certificate of the Superior Court reporting the case, "to determine the sufficiency of the plea of the respondents to the information filed herein." In other words, by reason of the foregoing facts which are stated in their joint and several pleas or answers, and to which demurrer was filed, the respondents claim they hold their respective offices rightfully, and pray judgment.

It is universally recognized, in a democracy such as ours, that the right of suffrage, properly, freely, and fully exercised, is fundamental and vital. Regular elections must be held that the people may select those whom they desire to guard and govern. Rights, such as free speech, freedom in religion, rights in property, and our own personal liberties, depend in a large measure upon the periodic selection of suitable, honest and efficient, state, county, and municipal officials. The legislature well knows these necessities, and the statutes of this State, with reference to towns as well as in the charters of cities, provide how often and when such elections shall be held. It is the duty of the proper officials to follow these laws in order that the voting rights of all citizens be protected and preserved.

Frequent elections fairly and honestly held are the important thing. The precise and stated time of holding is not always material if another time is not prohibited. Directory provisions of the statutes should be followed as near as may be.

Although this case at bar may present some features that have never been considered by any court of last resort, we

have no hesitation in declaring that the election of February 25, 1952, in the city of Lewiston, and the run-off election of March 3rd, 1952, were valid. The respondents were duly elected to their respective offices as Mayor and Aldermen of the city.

Practically all courts have upheld elections where adequate notice has been given and where the voters have fully and freely expressed, or had the opportunity to express, their will. Mandatory provisions of law, such as certain necessary qualifications of voters, must be strictly complied with, but the directory provisions of statutes or of charter, such as the date of the annual election, need be complied with under excusable circumstances, only so far as may be. The decisions which relate to this general proposition of law seem to be founded on the doctrine announced in 2 Kent's Commentaries, 5th Edition, 295, (468) as follows: "The sounder and better doctrine I apprehend to be, that where members of a corporation are directed to be annually elected, the words are only directory, and do not take away the power incident to the corporation to elect afterwards, when the annual day, has by some means, free from design or fraud, been passed by."

In *Norway Water District* v. *Water Company*, 139 Me. 311, 320, this court upheld an election though the technical procedure was not followed. The court specifically adopted the reasoning of the California Court in *East Bay Mun. Util. Dist.* v. *Hadsell et al.*, 196 Calif. 725, 239 Pac. 38, as follows:

"It is thus apparent that the election itself is the controlling feature and the ultimate objective of the statute. If the election has been honestly and fairly conducted, and no one has been injured by the manner in which the preliminary steps leading thereto have been taken, no reason exists for declaring it invalid. In the instant case there was

no evidence offered on the part of the defendants tending to show that they had been prejudicially affected by the procedure which had been adopted and followed leading up to the decision. As heretofore set forth, the findings by the court were to the effect that no error or irregularity or omission in the proceedings affected any of the substantial rights of the defendants; that they had full notice that the proposition for the issuance of the bonds would be submitted to the electors of the district at an election to be held on the said 4th day of November, 1924; and that the vote at such election was a full and fair expression of the will of the electors of the district who were qualified to vote at said election upon said proposition. Those findings, while in some respect possibly subject to appellants' criticism that they are but conclusions of law, nevertheless speak the truth as an ultimate expression by the court of the conditions surrounding the situation. The books are filled to overflowing with statements of the rule, in substance, that, wherever possible from a standpoint of legal justice to validate an election, it is the duty of the court to do so."

Our court also, in *Rounds, Petr.* v. *Smart,* 71 Me. 380, 388, where the validity of return of votes of the city of Calais was challenged for lack of signature of city clerk, say "the rules for conducting an election in the statute are directory and not jurisdictional in their character."

See *Farris, Att. Gen.* v. *Libby,* 141 Me. 362, 368, where Mr. Justice Thaxter in a case holding that the legislature intended that "the old council should remain in office until the new council provided by the amending statute should be qualified to act" states the rule that "wherever possible from a standpoint of legal justice to validate an election it is the duty of the court to do so."

Our court has also stated, in a case where the question of an assessor holding over was considered, that where a

term is fixed the words are directory and the assessor continues to be such after the period and until another is elected. *Bath* v. *Reed,* 78 Me. 276.

In a case where the two branches of a city council were directed to elect an officer at a certain time, and there was no prohibition against electing him at some other time, and the Charter contemplated an annual election, the provision that the election should be held at a particular time is directory. "The time relates only to the regular and orderly change of officers according to the scheme established by the charter." *Russell* v. *Wellington,* 157 Mass. 100, 105, 31 N. E. 630. See also *Rutter* v. *White,* 204 Mass. 59, 90 N. E. 401.

The Court in New Hampshire adopted the views of Chancellor Kent above quoted, and decided that where the annual meeting of a corporation was to be held at the time and place provided by the By-Laws, and the directors were elected before the By-Laws were adopted, that the election was valid. Many English authorities are cited in the New Hampshire opinion to the effect that the time for holding an election is directory only and intended only to prevent surprise. *Hughes* v. *Parker,* 20 N. H. 58. See *Stone* v. *Small,* 54 Vt. 498, where there were fraudulent adjournments and the doctrine announced by Chancellor Kent was approved. See also *State* v. *Carroll* (R. I.), 24 Atl. 835, holding notice to be directory where electors have actual notice.

Many of the authorities relative to time and place of holding an election under constitutional or statutory provisions, and of mandamus to compel the calling of an election after the statutory date is passed, are collected in *Rainwater* v. *State,* 237 Ala. 482, 121 A. L. R. 981, note at page 987.

The text writers notice the recent trend of the courts to hold valid an election held at a later date than is provided

in statute or charter, if the electorate have notice and opportunity to vote, and if there is no constitutional or statutory prohibition and no "fraud or design." *McQuillan Municipal Corporations* (2nd Edition) Chap. 12, Secs. 428-430, 18 *American Jurisprudence,* "Elections," 250 Sec. 112; *Dillon on Municipal Corporations,* 5th Ed. 2664, Section 1496; 62 *Corpus Juris Secundum,* "Municipal Corporations," 907, Sec. 471.

The attorney general relies upon the case of *State ex rel. Lorentz* v. *Pierson,* 86 W. Va. 533, 103 S. E. 671, where the West Virginia Court held that where "an election is held on another day than that fixed by law it will be void." The West Virginia Court, however, ordered, in mandamus proceedings, that a later election be called by the municipal officers. From this West Virginia case the attorney general argues that the municipal officers in the case at bar had no authority to call the election of February 25th and the election is void, although he admits that the court might have compelled the officers to call a later election. It seems somewhat inconsistent that where no election is held due to an excusable mistake, or by an unavoidable circumstance, that the date of a later election may only be fixed by the court in mandamus, although the officials are willing to act. This decision of the West Virginia Court has since been modified, if not completely overruled, in later cases before the same court. See *Gay* v. *Buckhannon* (W. Va.), 123 S. E. 183; *State* v. *Curry,* 98 W. Va. 72, 126 S. E. 489; *Bannister* v. *Glasgow* (W. Va.), 185 S. E. 2; *State* v. *Langford* (W. Va., 1940), 9 S. E. (2nd) 865.

In this case at bar there was no fault, mistake, carelessness, fraud, or design, on any person's part to prevent the regular election duly called for the 3rd Monday in February (February 18, 1952). There was a storm of such unusual proportions and such unexpected violence that it might well

be considered that there was no election due to "an act of God." There was no constitutional or statutory prohibition of an election to be held on a later date.

The election on the 4th Monday of February (February 25, 1952) was duly called by the municipal officers and a large proportion of the registered voters expressed their will. More than 63% of the voters also took part in the "run-off election" on the first Monday of March (March 3, 1952), provided by charter, to select the mayor and one alderman who had not received the necessary majority at the election of February 25th. The words in the Charter of the City of Lewiston providing for an annual municipal election on the 3rd Monday of February of each year must be held, under the circumstances of this case, to be directory.

The election duly held on the 4th Monday of February was valid. The respondents hold their respective offices rightfully and lawfully. Accordingly the entry will be,

*Information dismissed.*