# CHARLESTON.

STATE *ex rel* H. R. GAY *et al. v.* CITY OF BUCKHANNON *et al.*

Submitted April 30, 1924. Decided May 6, 1924.

1.  MUNICIPAL CORPORATIONS—*Charter Held to Require Officers to Hold City Election at Certain Time Yearly.*

    Properly construed, the charter of the city of Buckhannon (chap. 15, Acts 1919, Municipal Charters), requires the mayor, recorder and councilmen, acting as the governing body under the councilmanic form of government therein set out, to provide for and hold an election on the 2nd Tuesday in May of each year for the purpose of electing municipal officers for the ensuing year.  (p. 383).

2.  SAME—*Charter Held to Authorize Nomination of Officers by Petition.*

    Under the charter candidates for  mayor,  recorder  and councilmen may be nominated by petition signed by the requisite number of legal voters filed with the city recorder not less than fifteen days before the  general  municipal election.  '(p. 386).

3.  MANDAMUS—*Governing Body of City Can be Required by Mandamus to Hold Election; Election Ordered Held on Later Date on Failure to Provide for Election Until Time Too Limited for Preparation.*

    Mandamus will lie to compel the governing body of said city to appoint election officers and perform duties incident to the holding of the general municipal election where it fails or refuses to act; and if it has delayed or refused to call and provide for the election until the time is too limited in which to prepare for the conduct of the election on the day fixed by the statute, it will be ordered to hold the election on a later date.  (p. 385).

Mandamus by the State, on the relation of H. R. Gay and others, against the City of Buckhannon and others.

*Writ awarded.*

*Young & McWhorter,* for relators.

*C. N. Pew,* for respondents.

LIVELY, JUDGE:

The object of this mandamus proceeding is to require the mayor, recorder and councilmen of the city of Buckhannon to hold a municipal election for the purpose of selecting municipal officers for the ensuing year and to make out proper tickets to be used in the election to be called, and to place the petitioners thereon as candidates for the respective offices for which they claim to have been legally nominated, and to do all things necessary for the calling, holding and ascertaining the result of the election. Petitioners say a charter was granted to the city of Buckhannon by the legislature of 1919, a copy which is filed; that under a provision of the charter the voters in 1923, by an election duly held, adopted the councilmanic form of government authorized by section 56 of the charter; that the city was laid off into five wards, and the present mayor, recorder and councilmen, who are made parties to the alternative writ, were duly elected to their respective offices on the 2nd Tuesday of May, 1923, and were inducted into office for a term of one year and are now serving; that the date for holding the annual election, as set out in the charter and by ordinance passed in pursuance of the charter, is the 13th day of May of each year; that petitioner Gay has been nominated for the office of mayor of said city, petitioner Stump as candidate for recorder, and each of the other petitioners has been nominated as a councilman from his respective ward of said city, all in accordance with section 56 of the charter, which provides that persons may be nominated for any office by petition duly signed by not fewer than 50 voters of the city and in any event by not less than one per cent of the legal voters of the ward to be represented, in which he resides, in manner and form as required by general law, such petition to be filed with the city clerk not less than fifteen days before said general election; that they have each been so nominated for the respective offices named and

have filed with the city clerk the petitions required by the statute duly signed by the proper number of voters and in all respects in accordance therewith; and that they are eligible for the respective offices for which they have been so nominated. The petitioners further aver that the mayor, recorder and councilmen of the city have refused and declined and now refuse to appoint commissioners of election, cause tickets to be prepared or in any other respect conform to the requirements of the law for holding the election, although requested so to do; and upon information charge that the reason for the refusal to call and conduct the regular municipal election required to be held on the 13th of May for the selection of municipal officers, is that the present incumbents, defendants herein, may continue to hold their respective offices for the ensuing year.

In the return to the alternative writ the mayor, recorder and councilmen admit the change in the form of the government from the commission form to the councilmanic form as authorized by the charter and that they were duly elected to their respective offices on the 2nd Tuesday of May, 1923, qualified as such and began the discharge of their official duties on the first day of July, 1923, and are now in the performance of their duties; that they have not called an election for the selection of municipal officers for the 2nd Tuesday in May, 1924, because they are in doubt as to their authority to call and conduct such election under the provisions of the charter; that being in doubt as to their authority and the proper construction of the charter they believe it to be their official duty to leave the question of their right and duty in the matter to the proper judicial tribunal to define their power and duty in that regard; that under the charter they are required to have ballots printed at least four weeks before the 2nd Tuesday in May, and that it would be impossible for respondents to do so now; that if they have the legal right to hold the election on the 2nd Tuesday of May the charter requires that a ticket be nominated by a convention before nominations can be made by petitions filed fifteen days before the date of the election. Respondents say they are in doubt as to whether they have the right to call and

conduct the election in accordance with the provisions of the charter and in doubt as to whether petitioners have been legally nominated by petitions, and for these reasons have refused to call and conduct the election, but will gladly do so if it be judicially determined that they have the power under the charter, and would prefer that an election be held if it be permitted under the charter, rather than to hold their respective offices until the uncertain provisions of the charter can be amended at the next session of the legislature. Respondents, upon information and belief, further say they do not know whether a part of the petitioners who have been nominated for office by petition are qualified and eligible to hold the respective offices for which they are candidates, and that none of the proposed candidates have set out their qualifications; and respondents, upon information and belief, say a part of said proposed candidates are the owners of stock in a water and light company, a public service corporation doing business in the city.

Does the charter empower and require the mayor, recorder and councilmen of the city of Buckhannon to call and conduct an election for municipal officers of said city on the 2nd Tuesday in May? This question which is presented by the pleadings and its answer depends upon the proper construction of the charter. Petitioners assert that the power and duty are vested in and imposed upon the respondents; while the respondents say they are in doubt as to their power and duty in that regard, and ask for direction by this court. We are of opinion that the charter, reasonably construed, directs that the term of office under the councilmanic form of government authorized to be adopted by the voters by the charter, is one year, and that the general election therefor should be held on the 2nd Tuesday in May annually. Under the commission form of government three commissioners were elected, assuming their duties on the first day of July after election, and their term of office expired in one, two and three years, a certain commissioner named holding for one, another for two, and the other for three years; and the annual election was to be held on the 2nd Tuesday in May. These commissioners were given numerous powers for conducting the mu-

nicipal affairs, including the authority to appoint and fix places for holding city elections; and to adopt ordinances for the proper exercise of their municipal powers and duties. Pursuant to the charter they adopted an ordinance relating to city elections which provides that the ''annual election of the city officers shall be held on the 2nd Tuesday in May of each year.'' Section 3 of this ordinance requires the board of commissioners, at least four weeks before the day of election, to select from the two leading political parties from each precinct three commissioners and two poll clerks to hold the election, providing for their per diem, and qualification by taking an oath similar to that required of officers who conduct general elections. Section 56 authorizes the electorate of the city to change the commission form of government to that of the councilmanic form, the will of the voters to be ascertained by an election held for that purpose, and provides that in case such change be made the board of commissioners then in office should immediately divide the city into five wards, from each of 'which a councilman should be nominated who, together with the mayor and recorder, should be elected at the next succeeding general city election, all to be nominated by conventions called by a certain number of the voters and published in two newspapers of opposite political parties, signed by a committee of not fewer than five. It also provides that notwithstanding such conventions any person may be nominated for any office under the changed form of government by petition duly signed by not fewer than 50 voters of the city, and in any event not less than one percentum of the legal voters of the ward in which he resides, such petition to be filed with the city clerk not less than fifteen days before such general election. Under such changed form the mayor is to be the chief executive officer of the city and perform the duties of police judge as set out under the commission form; the recorder to perform the duties of the city clerk; and the mayor and recorder are members of the city council with the right to vote on all questions arising therein; and that the council is required to do and perform all other duties required of the board of commissioners and the members thereof as set out in the charter, and such other duties as fall within the purview of the charter, and to carry into effect

its provisions in the interests of the city and the inhabitants thereof. The term of office of the mayor, city recorder and councilmen is fixed as one year by section 56 of the Act. The clear provision of the charter is that there shall be an annual election for city officers held on the 2nd Tuesday of May; and that the term of office of the mayor, recorder and councilmen, in the event that the people should adopt the councilmanic form of city government, should continue for one year from their induction into office. To do so the mayor and recorder and the councilmen composing the common council of the city have the right and power to carry out these plain provisions of the charter and call and conduct the election. They would have that power, and it would be a duty imposed upon them by implication if the charter itself does not in terms vest them with it. But when we find in section 56 that the council is to do and perform all other duties required of the board of commissioners and the members thereof, and such other duties as come within the purview of the charter in order to carry into effect its provisions in the interest of the city, we find authority conferred upon them by direct language to call and conduct the city election. It is the policy of the Act plainly apparent that the electorate of the city should have the right to select its governing officials every year. Generally, where the time and place for holding elections are fixed by statute it is not necessary to give notice of the holding of the election by proclamation, because the voters are bound to take notice of the provisions of the statute; and the policy of publishing a proclamation stating that a regular election will be held on a certain day is followed in many towns for bringing the fact to the notice of the voters. We have not examined the charter under consideration to ascertain if any special proclamation or notice of the regular city election should be given. It is immaterial. The statute and ordinance require the commissioners, and would necessarily require those performing the duties of the commissioners, namely the common council, to select and appoint from the two leading political parties commissioners of election and poll clerks with the qualifications provided by the general law of the state at least four weeks before the annual election for the purpose of conducting the same, requiring

them to take the oath of office above referred to before entering upon the discharge of their duties as election officers. It is not necessary that a convention should be held and candidates nominated before preparation for the election in the appointment of commissioners and clerks be done. The council can not presume that no conventions will be held or that no persons will be nominated by petitions in the manner set out by the charter; or that there will be no candidates. Sometimes the office seeks the man. We think it was their plain duty to provide the election machinery for the conduct of the election as prescribed by the charter. Having failed to do so, mandamus will lie at the instance of any citizen, taxpayer and voter of the town or at the instance of any one who seeks to be elected to office. *Frantz* v. *County Court,* 69 W. Va. 734. It is also reasonably clear that candidates for the municipal offices may be nominated by conventions or by petitions signed by the requisite number of voters in the city or in the respective wards. Neither method is exclusive. The petition and alternative writ aver that the petitioners were duly nominated by petition in accordance with the provisions of the charter and are entitled to be placed upon the municipal ticket to be voted at the election; the averment in the return upon information and belief "that part of said proposed candidates are owners of stock in a public service corporation doing business in the city" is too indefinite and uncertain to raise a question as to their qualifications. The return does not say which of the petitioners own stock in the public service corporation. The allegation is not specific or definite. The writ will be issued as prayed for, requiring the respondents to call and conduct an election in the city of Buckhannon for the purpose of selecting municipal officers for the ensuing year; but inasmuch as the time is too short for making preparation for the election as required under the charter before the 2nd Tuesday in May, and in order to allow other persons who may desire to file petitions nominating them for the various offices to be filled, another and later day will be fixed for holding the election, namely, Thursday the 29th day of May, 1924. The case of *State ex rel Heironimus* v. *Town of Davis,* 76 W. Va. 587, holds that where the proper authorities have failed to hold an

election on the date named by law, they may be required by mandamus to hold the election on a later date. Statutes fixing the time for holding elections have been held to be directory and not mandatory to the extent of permitting and authorizing an election at a later date than that named in the statute, where the authorities whose duty it is to call the election or prepare for and conduct it, neglect to perform the duty, and the obligation still remains. *People* v. *Murray,* 15 Cal. 221; *State* v. *Smith,* 22 Minn. 218; *Russell* v. *Wellington,* 157 Mass. 100; *State* v. *Murray,* 41 Minn. 123.

*Writ awarded.*